ALBANY,
Feb. 1825.

Jackson
v.
Colden.

## JACKSON, *ex dem.* WALSH, *against* COLDEN,

*A foreclosure under the act concerning mortgages, (1 R. L. 312,) by an advertisement and sale, is complete without a deed of conveyance, where the mortgaged premises are purchased by the mortgagee, or his assignee.*

*It does not lie with the mortgagor or assignor of the mortgage, to object that the power of sale was not regularly acknowledged and recorded.*

*A mortgage created for the purpose of being assigned upon a loan of money, and assigned accordingly, upon a loan at a discount of more than seven per cent. is not usurious, unless the assignee know, at the time of the assignment, of the purpose for which the mortgage was made.*

EJECTMENT for lot No. 126, in Pittstown patent, in the town of Hoosick, and county of Rensselaer, tried at the Rensselaer Circuit, December 13th, 1822, before his Honor (the late) Chief Justice SPENCER.

On the trial, the plaintiff introduced the following evidence : 1. A mortgage of the premises in question, executed by John Vander Speigel and Laura his wife to Colden, the defendant, dated January 22d, 1819, acknowledged before Asher Armstrong, a commissioner to take the acknowledgments of deeds, on the same 22d day of January ; and by Laura, his wife, on the 29th of the same month ; and recorded in the Clerk's office of the county of Rensselaer, the same 29th of January, to secure the payment of $4500, one half on the 1st of March, 1820, and the other half on the 1st of March, 1821, with interest payable annually on the 1st of March. The commissioner who was sworn as a witness, stated that this acknowledgment was taken at Bennington, Vermont. 2. An assignment of this mortgage by Colden to Walsh, dated February 2d, 1819, expressed to be in consideration of $4500, acknowledged November 9th, 1821, and recorded in the Clerk's office of Rensselaer county November 26th, 1821. By this assignment, Colden covenanted to make good to Walsh any deficiency of $4500, which might remain on a sale of the premises by virtue of the power in the mortgage. 3. The affidavit of Gardiner Tracy, stating that he had advertised the mortgaged premises in question for six months in the newspaper called the Lansingburgh Gazette; and the affidavit of William Walsh, stating that he

*The mortgagor, in order to warrant ejectment against him, is not entitled to notice to quit after foreclosure. At any rate, the advertisement of sale operates as a sufficient notice to quit.*

*A commissioner to take the acknowledgment of deeds has no power to take the acknowledgment out of the state ; though*

*Semble,* he may take the acknowledgment in any county within the state, though out of the county for which he is appointed.

affixed a copy of the advertisement on the outer door of the court house in the city of Troy on the 6th day of February, 1821 ; and also the affidavit of Jacob C. Lansing, stating that he acted as auctioneer, and sold the premises by virtue of the mortgage (and that the sale was a fair, open and public sale) at the place mentioned in the advertisement, on the 9th day of August, 1821 ; and that the premises were bid off by Walsh, the lessor of the plaintiff, and assignee of the mortgage, for $3000. These affidavits were duly taken and recorded in the Clerk's office of the county of Rensselaer, on the 22d day of August, 1821.

The plaintiff then having proved the defendant in possession, rested.

The defendant's counsel moved for a nonsuit, on the ground that the foreclosure was imperfect, as the lessor was the purchaser, and could not convey the premises under the foreclosing sale ; and that no notice to quit had been shown. The Judge ruled that though he thought the foreclosure inoperative, there being no deed of foreclosure ; yet the plaintiff might recover under the assignment without showing a notice to quit, to which opinion the defendant's counsel excepted.

The defendant then introduced in evidence, 1. A deed of defeasance executed by Vander Speigel to Colden, dated January 22d, 1819, for the premises in question, acknowledged before Asher Armstrong, a commissioner, the same day it bore date, reciting that Colden, by his indenture of that date, conveyed to Vander Speigel, in fee, the same premises ; that Vander Speigel on the same day, by bond and mortgage of the same date, conveyed to the defendant for the purpose of securing the purchase money of the premises ; and that it was the defendant's intention to assign the mortgage ; and declaring that if the defendant should pay the holder or assignee of the bond and mortgage the money secured by them according to their condition, or furnish money to Vander Speigel to do the same ; then the conveyance from the defendant to Vander Speigel to be void, and the premises revest in the defendant, &c. ; and that Vander Speigel should re-convey, &c. 2. A deed in fee of the premises in question from the defendant to Van-

Jackson
v.
Colden.

der Speigel, dated January 22d, 1819, with full covenants duly acknowledged before Asher Armstrong. 3. A bond of indemnity executed by the defendant to Vander Speigel, dated January 22d, 1819, reciting the deed of defeasance, bond and mortgage; and binding the defendant, in case a sale of the premises should prove insufficient to pay the amount of the bond and mortgage, to save Vander Speigel harmless against the deficiency.

The defendant then proved that the mortgage was sold by Colden to Walsh at a discount of 5 per cent. and that interest was to be calculated between them so as to allow Walsh 12 per cent. from that time to the time when the mortgage should become due; that the assignment, bond and mortgage were to be deposited with a third person, and in case the defendant paid back the money advanced upon the assignment, with interest, and $50 premium, within 3 months after the advance; the mortgage, &c. and assignment were to be delivered back and the assignment cancelled. In speaking of this transaction afterwards, Walsh declared that this was what Colden called "raising the wind."

Considerable testimony was then offered by both parties, the defendant seeking to show that the lessor of the plaintiff knew of the above transactions between the defendant and Vander Speigel; and that they were for the purpose of enabling the defendant to raise money by loan upon the assignment of the mortgage, and the plaintiff seeking to avoid any evidence of this fact. It is not necessary to state this testimony. Suffice it to say, the Court, as will be seen by their opinion, did not think it established the fact of the lessor's knowledge.

A verdict was taken for the plaintiff, subject to the opinion of the Court on a case.

*D. Buel*, for the plaintiff. 1. The sale of the premises by virtue of the power in the mortgage was perfect. No deed of foreclosure was necessary. The statute (1 R. L. 375, sess. 36, ch. 32, s. 10) sanctions a sale to the mortgagee or assignee, who cannot convey to himself. The sale was not a judicial act; but the mere execution of a trust.

The evidence that the trust is executed, consists of the various affidavits touching the advertisements and sale, which are to be recorded. (1 R. L. 374, s. 7, 8.) For what other purpose is this required by the statute? The reason why a Sheriff's sale of land is invalid without a written conveyance is, that the omission is within the mischief of the statute of frauds.(a) He is not bound even to return the execution; but here we have the same authenticity as in case of a sale under the act for the partition of lands by authority of the Supreme Court, Court of Common Pleas, or Court of Chancery, in which latter case no release is necessary,(b) or any other judicial sale. It is equivalent to a strict foreclosure in Equity.(c) I do not mean a fore closure by sale, which is a modern practice of the Court of Chancery; but the English foreclosure, whereby the title vests in the mortgagee or assignee by act and operation of law. In this case a deed is never executed. The object and effect is merely to shut out all parties in interest from the right of coming to redeem. All the proceedings are, by statute, made matter of record; and become evidence of a nature as high and conclusive as the recorded decree of a Court of Equity. The 10th section of the statute of mortgages (1 R. L. 375) was passed long after the general statute relative to sales under the special power,(d) but not a word is said of a written conveyance. True, the 6th section supposes a conveyance, but it is evident, on comparing this with the 10th, that none is deemed necessary when the purchase is by the mortgagee or assignee. One reason for requiring a deed upon a Sheriff's sale, doubtless was, that without it the registry acts might be evaded in recording counties. This evil cannot exist where all the proceedings are recorded in the proper office. Besides, here is the writing made necessary by the statute of frauds. The assignee took all the interest of the mortgagee. This was made a matter of record, as well as the mortgage; and, by pursuing the record, the purchaser finds that all outstanding equity is extinguished.

2. The commissioner to take acknowledgments and proof, &c. has all the power given by a former statute(e) to a

ALBANY,
Feb. 1825.

Jackson
v.
Colden.

(a) *Simonds* v. *Catlin,* 2 Caines' Rep 61. *Jackson* v. *Catlin,* 2 John. Rep. 248. *Catlin* v. *Jackson,* 8 id. 520.

(b) 1 R. L. 510, s. 5. *Young* v. *Cooper,* 3 John. Ch. Rep. 295.

(c) *Bergen* v. *Bennet,* 1 Caines' Cas. Err. 1, 20. *Jackson* v. *Henry,* 10 John. Rep. 185, 195.

(d) Vid. 1 K. & R. 482, s. 5, 6, sess. 31, ch. 156, s. 5.

(e) 1 R. L. 309.

ALBANY,
Feb. 1825.

Jackson
v.
Colden.

(f) Sess. 41,
ch. 55.

(g) 1 John.
Rep. 498.

(h) Jackson
v. Chase, 2
John. Rep. 84,
87. Weaver v.
Belcher, 3
East, 449.
Berry v. Mu-
tual Ins. Co.,
2 John. Ch.
Rep. 611.
Jackson v. Du-
bois, 4 John.
Rep. 216.

(i) Smartle
v. Williams, 1
Salk. 245.

(j) Jackson
v. Laughhead,
2 John. Rep.
75. Jackson v.
Chase, id. 84.
Jackson v.
Fuller, 4 id.
215. Jackson
v. Wheeler, 6
id. 272.

(k) Jackson
v. Deyo, 3 id.
422.

(l) Wycaff
v. Longhead,
2 Dall. 92.
Munn v. The
Com. (i., 15
John. Top. 44.
Bush v. Liv-
ngston, 2
Cain. Cas. Er-
roi, 66.

Judge of the Supreme Court or Court of Common Pleas.(f) In neither statute is the officer limited in the execution of his functions to any particular place. His jurisdiction is not territorial, so far as the mere acknowledgment is concerned. *Jackson* v. *Humphrey*,(g) which will doubtless be relied on against us, related to the proof of the deed, and involved the question whether an oath could be administered out of the state; an act local in its nature according to the doctrines of the criminal law, which considers a venue within the state essential, and to be made out in proof, should an indictment for perjury become necessary. In that case, Emmott, counsel, who argued against the act of the Judge, conceded that had his act been the mere taking an acknowledgment, it would have been valid, though without the state. Suppose the commissioner to have stood on the New York side, and the cognizors on the Vermont side of the state line, during the acknowledgment, would not the objection be deemed ridiculous?

3. But the acknowledgment is not a necessary part of the mortgage, except so far as the *feme covert* was concerned. It is only necessary to warrant the recording; and the plaintiff is therefore entitled to recover under the assignment.(h) The legal estate passed to the assignee, and he may maintain ejectment.(i)

4. Notice to quit was unnecessary. The relation of the parties was that of assignor and assignee, not mortgagor and mortgagee, to which last alone the doctrine of notice to quit applies, where a mortgage is in question.(j) There must be either a tenancy, or *quasi* such, to require notice; and even then a disclaimer forfeits the right.(k) Colden holds adversely. In this character, no one can demand notice; no presumption can arise that he is in by consent of the lessor of the plaintiff, which is the notion upon which notice is required to a mortgagor.

5. Here was no communication for the loan, when the mortgage was created; and selling it at a discount was not usurious, unless accompanied with an usurious intent. There must be a design to evade the statute of usury.(l) The case does not come within *Munn* v. *The Commission*

*Company* ;(*m*) and *Powell* v. *Waters.*(*n*) Those cases go on the ground that the lender knew the purpose for which the paper was created. This will be obvious by recurring to the authorities(*o*) upon which the later cases are founded, in all of which knowledge appear. Suppose the broker of negotiable paper made to procure a loan, tell the lender upon discount that the paper is valid; would he be allowed to gainsay this. Knowledge is always of the essence of usury.(*p*)

At any rate, the Court have never gone so far as to say that a mortgage and bond created to raise money, and sold at a discount, even with knowledge, shall, for that reason, be holden usurious and void.

But if void for usury, the transaction was only so as between the original parties, and the defendant cannot lie still, suffer a foreclosure and then avail himself of the usury in this manner.(1)

*J. V. Henry*, (same side.) as to the point of usury, cited *Fuller's Case,*(*q*) *Murray* v. *Harding,*(*r*) *Le Grange* v. *Hamilton,*(*s*) and Ord on Usury, 74–5–6, and the cases there cited.

*L. Mitchell* and *A. Van Vechten*, for the defendant.

1. The foreclosure was inoperative and void. Only one practice has obtained in relation to this summary mode of foreclosure upon the power contained in the mortgage. A deed of conveyance is, and always must be executed through a third person, where the mortgagee or assignee becomes the purchaser. The 6th section contemplates a conveyance, and the 10th was merely to remove a doubt whether the mortgagee, &c. being a trustee, could purchase for his own benefit. It was not intended to alter the forms of doing the business. One acting under a power must give the same title, and convey in the same form as his principal. A mortgagee does not convey in his own right. The title is not in him, but the mortgagor, from whom the power is derived. One cannot give a deed to himself; but the same form should be pursued as in *Jackson* v. *Henry*, (10 John. 185, 186–7.)

ALBANY, Feb. 1825.

Jackson v. Colden.

(*m*) 15 John Rep. 44.
(*n*) 17 id 176.
(*o*) *Jones* v *Hake*, 2 John Cas. 60. *Wilkie* v. *Roosevelt*, 3 id. 66. id. 206, S. C.
. (*p*) *Barclay* v. *Walmsley*, 4 East, 55. *Floyer* v. *Edwards*, Cowp. 112 to 116. *Nevison* v. *Whitley*, Cro. Car. 501. *Buckley* v. *Guildbank*, Cro. Jac. 678. *Bush* v. *Buckingham*, 2 Ventr. 83. *Livingston* v. *Bird*, 1 Root, 303. Ord on Usury, 59 to 62.
(1) *Jackson* v. *Henry*, 10 John. Rep 185.
(*q*) 4 Leon 208.
(*r*) 3 Wils 394.
(*s*) 4 T. R 613 and 615.

(s) 1 R. L.
374, s. 6.
(t) 1 John.
Rep. 498.

2. The power was never properly acknowledged. Of course, it was never properly recorded ; a ceremony made essential by the statute(s) to the validity of the sale. The power of the officer is confined to his own state. Commissioners are mere county officers. The case of *Jackson* v. *Humphrey*(t) is conclusive, and cannot be distinguished. The commissioner wants the power ; and it is the same thing whether the object be proof or acknowledgment. The purposes of the act are the same in each case ; to give effect to the deed. The extreme case put on the other side, of the commissioner and cognizor on different sides of the state line, will not help the matter. When a state officer is out of his territorial limits, he ceases *quoad* any act done there to be a state officer.

3. Notice to quit should have been given. No matter what the form of doing this business, the Court cannot but see that Colden was the real mortgagor. The ceremonies which passed between him and Vander Speigel were mere form. Colden was the owner of the land throughout. The title never passed from him. Allow him as to Vander Speigel, to be a mortgagee in possession, the assignment to Walsh was, at most, a mortgage, and established the relation of mortgagor and mortgagee between Colden and him. It was a sub-mortgage ; and a notice to quit was equally necessary, as if it had been a principal one. The agreement that the money should be repaid within a certain time, and the assignment cancelled, was plainly made out in proof. Clearly, Colden's interest might have been sold on execution. Indeed, no interest whatever passed to Vander Speigel. Being at first a mortgage, it always continued so.(u)

(u) 1 Pow.
on Mort. 146,
152, 157. *Mel-
br* v. *Lees,* 2
Atk.    495.
*Howard* v.
*Harris,* 1 Vern.
33. id. 190, S
C.

4. The assignment was void for usury. Here was a loan of money, upon an assignment by way of mortgage, to become void on repayment of an extravagant *per centage*, and 50 dollars premium. The transaction with Vander Speigel was a cover for usury. The assignment was to lie three months as a mere escrow, to await the repayment. Walsh was secured at all events for his money by Colden's personal covenant for the deficiency. The Court will look at the real substance and nature of the transaction. Walsh and

Colden stood in the relation of lender and borrower. No doubt here was a loan at an illegal per cent. the very definition of usury. The Court will not suffer it to be disguised by the shape in which the business was done. Knowledge in Walsh was not necessary to make the assignment void. This was not deemed necessary in the cases cited on the other side. It is enough that the instrument is to derive its existence from the usurious act; and the case is the same in principle, whether it be a mortgage, a note, or bill of exchange. Knowledge or a corrupt agreement are necessary to be shown, only where the offender is prosecuted as a criminal.(2)

The recorded affidavits of sale are said to be sufficient evidence even to satisfy the statute of frauds. But they are no more than *prima facie* evidence of a sale: none at all of the conveyance. For aught that appears from these, the consideration money may never have been paid. The premises may be set up and sold again for want of payment. It is a deed of conveyance only which can safely be received as the final execution of the power. All the facts proved by the affidavits are revocable in their very nature. The rule is universal, that a freehold cannot pass short of a writing under seal. The analogy to a case of strict foreclosure does not hold. There the right of redemption is cut off by a decree. If this be so as to the mortgagee upon a statute sale, why not the same as to any other purchaser, to whom a deed has always been holden necessary.

*J. V. Henry*, in reply. The Court will not extend the case of *Jackson* v. *Humphrey*.(v) Were the office of commissioner judicial, it would be proper to confine him to the territory for which he is appointed. But it is merely ministerial, at least in taking acknowledgments. Suppose a commissioner of one county should take an acknowledgment in another; is there a doubt that it would be valid? The statute recognizes the taking acknowledgments and proofs, in foreign countries, by a judge of another state, or the United States; evidently regarding this power as personal, not territorial. The legislature never contemplated confining the proof or acknowledgment to state bounda-

*Margin notes:*

ALBANY, Feb. 1825.

Jackson v. Colden.

(2) *Dunham* v. *Dey*, 13 John. Rep. 44.

(v) 1 John Rep. 498.

Jackson
v.
Colden.

(w) *Bergen*
*v. Bennet*, 1
Cain.      Cas.
Err. 17.

(x) Id. 10,
11

ries, with the view to prosecution, for a crime which might be committed in acknowledging or proving a deed.

But the mortgage was good on its face. So was the acknowledgment. Is it to be tolerated, that Colden, the party who imposed them upon Walsh, shall now be permitted to gainsay them? Beside, the registry of the power is not necessary to the validity of the sale as between the parties.(w)

Must the mortgagee, then, stand by, and see the premises sacrificed upon the bid of another. Such is the effect of the doctrine contended for. Cases may exist, in which the bidding cannot be properly confided to another. To avoid this evil, the legislature have empowered him to purchase, to avoid the effect of Hamilton and Tompkins' reasoning in *Bergen* v. *Bennet.*(x) Had it not been for this statute provision, the complete loss of the property to the mortgagee, might be the consequence : and the argument, that he cannot deed to himself, is conclusive that no conveyance is necessary. The statute would not sanction a nugatory thing. It intended that the purchase should, in itself, without deed, operate as an extinguishment of the equity of redemption, except as to creditors by judgment or decree, whose rights are expressly saved. The sale and conveyance are treated by the statute as distinct things. Suppose, after the sale, Vander Speigel had filed his bill to redeem, and these proceedings had been pleaded in bar ; would they not be con sidered a complete bar in Equity ? The mortgagee already has the legal estate after forfeiture. The statute gives the form of cutting off the equitable one by an extrajudicial sale. Foreclosure, both in equity and at law, is considered in this light. In neither case is a deed necessary.

If the foreclosure was complete, what becomes of the defence of usury ? It must have been pleaded to a bill for foreclosure ; and, at law, it must be shown by bill before the sale is made, provided the purchase be *bona fide.*

Notice to quit is out of the question ; for the assignment was absolute on its face. No interest whatever was left in Colden. It was at most, an equitable mortgage, in virtue of the parol agreement to cancel on repayment. To this, the doctrine of notice to quit has no application. In truth, it

is neither a mortgage at law or in equity, but a mere contract of purchase and re-purchase. If, however, a notice was necessary, the advertisement in the newspaper was a sufficient notice within the rule.(y)

There is no similarity between the case of a promissory note, created for the purpose of discount, and this mortgage, In the former case, the note has no legal existence, and cannot be enforced at law or in equity, till it takes effect by the discount itself. Its legal existence depends on the discount being a fair one. Here the mortgage was complete and available at law, independent of the discount. But if, as contended, the whole between Colden and Vander Speigel was mere ceremony and goes for nothing, and the sale be considered absolute, the objection is put down by another view. It was the same as selling the land itself at an under value. This is not usury. If the mortgage was valid in its inception, all the cases agree, that subsequent usury will not vitiate it.

SUTHERLAND, J. The plaintiff claims title to the premises in question, under a mortgage given by John Vander Speigel to the defendant, bearing date January 22d, 1819, which was assigned by the defendant to the lessor of the plaintiff, on the 2d day of February in the same year.

The mortgage was foreclosed under the statute ; and the premises sold on the 9th day of August, 1821, to the lessor of the plaintiff, he being the highest bidder ; and this action is brought, to recover the possession of the mortgaged premises thus sold.

The plaintiff's title is resisted on several grounds. 1. It is contended that the foreclosure was *void ;* first, because it was not, and could not be consummated *by a deed ;* the owner of the mortgage, in whose name the deed must be given, having himself become the purchaser. Secondly, because the acknowledgment of the mortgage was taken out of the state, by a commissioner of the state, and the power to sell, therefore, was not properly recorded. 2. It is contended that the contract, under which the assignment to the lessor took place, was *usurious ;* that he cannot,

ALBANY,
Feb. 1825.

Jackson
v.
Colden.

(y) *Jackson*
v. *Lamson,* 17
John.    Rep
300.

therefore, recover under the assignment, if the foreclosure should be held void and inoperative ; and 3. That the defendant was entitled to notice to quit.

I am inclined to the opinion, that the lessor of the plaintiff acquired a valid and legal title under the foreclosure, although no deed was executed upon the sale.   The statute (1 R. L. 375, s. 10) provides that no title to mortgaged premises, derived from any sale, made in virtue of a special power for that purpose contained in the mortgage, shall be questioned, impeached or defeated, either at law or in equity, by reason that the mortgaged premises were purchased in by the mortgagee or his or her assignee, or by his, her or their legal representatives, or for his, her or their benefit or account; provided that the sale was, in every other respect, regular, fair and with good faith.   Here is an implied statute authority to the mortgagee, or his assignee, to become a purchaser, not only by his agent, but in his own person.   The legislature must have been aware, that the owner of the mortgage is the person who makes the sale; and in whose name the conveyance to the purchaser must be given ; and when they authorized the mortgagee, or his assignee, to become a purchaser, they must have contemplated a sale without a deed, as none, in such case, can be given.   The other provisions of the act are adapted to meet a contingency like this ; and to guard against the objection on general principles, as well as those which grow out of the statute of frauds, to a foreclosure without deed.

The 7th, 8th, and 9th sections of the act provide for perpetuating the evidence of the regularity of the sale.   The affidavit of the printer who published the advertisement, and of the person who put it on the door of the court-house, and also of the person who acted as auctioneer at the sale, stating the circumstances of the sale, after having been duly acknowledged and certified, may be recorded at full length in the book of mortgages, in the clerk's office of the county where the lands lie ; and the record of either of the affidavits is made, *prima facie*, evidence of the facts set forth in it.

The affidavit of the auctioneer generally, and I believe universally, has a copy of the advertisement of sale attached

to it; and states that the sale was fair and public; and made at the time and place mentioned in the advertisement; to whom the premises were struck off, and for what sum.

Although the statute is not imperative, that these affidavits shall be recorded, yet the obvious importance to the purchaser, of putting the evidence which they contain beyond the reach of casualty, has rendered the practice of recording them universal. In this case, they were actually recorded within a fortnight after the sale; and the affidavit of the auctioneer, by reference to the advertisement attached to it, contains a particular description of the premises sold, the time and place at which the sale took place; and states that the premises were struck off to William Walsh, the lessor of the plaintiff, who was the highest bidder, for $3000.

This is clearly a sufficient note, or memorandum in writing to take the case out of the statute of frauds; and obviously distinguishes it from that of *Simonds* v. *Catlin*, (2 Caines' Rep. 61.) The point there decided was, that sheriff's sales upon executions were within the statute of frauds; and would not pass an estate without a deed or note in writing, signed by the sheriff; and that the return of the sheriff, in that case, upon the execution, was not a sufficient deed or note in writing within the act; because it did not contain the requisite certainty. Kent, Ch. Justice, who delivered the opinion of the Court, says, "It does not appear what estate was sold, whether an estate for years, for life, or in fee, nor is there any certainty as to the thing sold. It was stated to be all that farm or tract of land in Pompey, in the tenure and occupation of the defendant; but there was no estimation of the quantity of land sold, nor in what part of the town it lays, or how marked or bounded;" and he says, "in all cases of sheriffs sales, the thing sold must be specified with so much precision, as that, from the description, it can be reduced to a certainty." The affidavit of the auctioneer does contain all the particulars in which the return of the sheriff was here held to be defective; and clearly, in my judgment, removes the objection growing out of the statute of frauds.

If the statute, then, by authorizing the mortgagee, or his assignee, to become the purchaser at the mortgage sale. has impliedly dispensed with the necessity of a deed to pass the estate in such a case, since none can be given ; and if there is a sufficient note in writing to take the case out of the statute of frauds, then the equity of redemption of the mortgagor was regularly foreclosed, and the whole estate vested in the lessor of the plaintiff by the mortgage sale.

Whether the acknowledgment was void or not, on account of its having been taken in Vermont, by a commissioner of this state, it is not material to decide ; though I incline to the opinion that it would have been void, between different parties. But it does not lie in the mouth either of Colden or Vander Speigel, after having procured the acknowledgment to be thus taken, and the mortgage, with the power of sale to be recorded, to question the authority of the commissioner. They have affirmed his authority ; and shall not be permitted now to question it as against a *bona fide* purchaser under the power. But the acknowledgment and registy of the mortgage are not necessary to its validity, as between the original parties ; nor would an entire omission to record the power, affect the sale as between them. (*Berry* v. *Mut. Ins. Co.* 2 John. Ch. Rep. 611. *Jackson* v. *Dubois,* 4 John. Rep. 216.) Mr. Justice Kent, in *Bergen* v. *Bennet,* (1 Cain. Ca. Err. 17, 18,) says, the only use in recording the power is, for the benefit of the purchaser ; and it does not lie with the mortgagor to object to the validity of the sale, by reason of that omission.

The mortgage having been, therefore, regularly foreclosed, and the lessor of the plaintiff become the purchaser, neither the question of usury, nor the necessity of notice can arise. The lessor's title, is derived from the mortgage, in which there is no pretence of there having been usury; and not under the assignment, in which the usury is alleged to have taken place.

The mortgagor in possession, has never, I believe, been held to be entitled to a notice to quit from the purchaser under the foreclosure of the mortgage. There is no privity, nor any thing like the relation of landlord and tenant, sub-

sisting between them; (3 John. Rep. 422. 2 John. Rep. 75, 84. 4 John. Rep. 215. 6 John. Rep. 272,) but if there was, the case of *Jackson ex dem. Bennet* v. *Lamsen,* 17 John. Rep. 300,) has settled that the notice of sale under the power is equivalent to six months notice to quit.

It was urged on the argument, that this was not an operative mortgage, as between Vander Speigel and Colden; that it was made for the purpose of enabling Colden to raise money, and falls within the principle established by this Court in *Munn* v. *The Commission Company,* (15 John. Rep. 44,) and *Bennett* v. *Smith and Phelps,* (15 John. Rep. 355,) and *Powell* v. *Waters,* (17 John. Rep. 176,) that if a bill or note be made for the purpose of raising money upon it; and it is discounted at a higher premium than the legal rate of interest; and when none of the parties whose names are on it, can, as between themselves, maintain a suit on the instrument when it becomes mature, provided it had not been discounted, that then such discounting would be usurious, and the instrument void. Admitting that this principle may be applicable to specialties, as well as to negotiable paper, it must be with the qualification, that the person purchasing knew that the specialty was not operative, being made for the purpose of raising money. The evidence in this case does not establish the fact that Walsh knew of the circumstances attending the creation of the bond and mortgage when he became the purchaser of it.

His application to Vander Speigel to know if he had any objection to his purchasing the bond and mortgage; and Vander Speigel's reply, that he would as soon pay him as Colden, or any other person, afford satisfactory evidence that he at that time believed the bond and mortgage to be fair and valid; and there is nothing in the case to show that he learned the real nature of the transaction, before he completed the purchase, or until the winter of 1821.

This view of the case renders it unnecessary to consider whether the assignment of the mortgage to Walsh, was usurious or not.

WOODWORTH, J. concurred.

Jackson
v.
Colden.

SAVAGE, Ch. J. doubted upon the question of usury ; but as to the other points, he remarked as follows :

1. By the act concerning deeds, (1 R. L. 369,) and the act authorizing Commissioners to be appointed to take the proof and acknowledgment of deeds, passed March 24, 1818, (sess. 41, ch. 55,) it seems to have been the policy of the legislature, to provide officers authorized to take the proof or acknowledgment of deeds in all places where they could possibly be necessary. But it does not necessarily follow that they are confined to their territorial limits. The Judges of the Supreme Court of the United States have, of course, jurisdiction throughout the United States; and the Judges of the Superior Courts of the several states, within their states. There is nothing prohibiting those officers from acting within the limits of this state or of any other state. The trust, as to them, seems to be a personal one, arising from that weight of character supposed to be connected with the offices they respectively hold. The Commissioners, by the act of 1818, have the same powers which a master in Chancery or a Judge of the Common Pleas previously had. Their jurisdiction, no doubt, extended throughout the state ; and, but for the case of *Jackson* v. *Humphrey,* (1 John. Rep. 498,) I should have contended that their authority was not limited by territory. It was there decided that a Judge could not take *proof* in Canada, because he could not administer an oath out of the state, nor could the witness be convicted of perjury. These objections would lie equally well to an act by any other officer out of the state. We certainly could not convict a witness in this state who had sworn falsely in Vermont, before the Chief Justice of that state ; and if he should be indicted in that state for perjury thus committed, might it not be well urged that he had not offended against the laws of that state? And that the Chief Justice in administering an oath to him acted extrajudicially, and without authority under the laws of that state ? There is, however, one argument to be drawn from the act of 1818, in favor of confining the officers named in the act to their several appropriate jurisdictions. The commissioners first received their authority from the act of the 24th of March, 1818, the 5th section

of which provides that when a deed is proved or acknowledged before a Common Pleas Judge or Commissioner, and such deed is to be recorded in a different county from that in which the Judge or Commissioner resides, no record shall be made of it, unless accompanied by a certificate from the clerk of the county in which such Judge or Commissioner resides, stating that such person is Judge or Commissioner, and that the signature is genuine; and the 6th section provides that nothing in this act shall extend to deeds proved or acknowledged out of the state. Now, whether the 6th section is construed to extend to the whole act, or to the 5th section, it seems to show the intention of the legislature on this question. If it relates to the whole act, then it expressly denies the power of the Commissioners out of the state. If it has relation only to the certificate of the county Clerk mentioned in the 5th section, then, if the Commissioners possess the power contended for, this would follow, that when acting in their own counties, their signatures, and official existence must be proved by the county Clerk; but when acting out of the state no such proof is required; that is, when they act out of the state, greater credit is to be given to their official acts than when acting within it; an absurdity not to be imputed to the legislature.

I apprehend the legislature never intended the Commissioners should execute their offices out of the state. But that point is not very material in this case. The acknowledgment is necessary in order to warrant the record; but the recording a mortgage or power of sale is not necessary to their validity as between the parties.

2. The proceedings and sale under the statute are a species of foreclosure of the equity of redemption; and I confess I can see no necessity for a deed, unless when a third person purchases. The mortgagee has the legal estate. It is true, for some purposes, the mortgagor is deemed to be the owner and to be seised until after foreclosure; but he cannot set up title in himself against the mortgagee after condition broken. In *Bergen* v. *Bennett*, (1 Cain. Cas. Err. 1,) and *Jackson* v. *Henry*, (10 John. Rep. 185,) the assignee conveyed to his own agent, and the Court con-

Reynolds
v.
ſ⁻·· ·˖ⁿ˖d.

sider it equivalent to a purchase by the assignee. The first case happened before, and the last after the passage of the act authorizing the mortgagee, &c. to purchase. In both cases the conveyance was deemed valid. If so, would not a deed from the assignee to himself be valid? Such a deed would certainly be an useless ceremony, if it be true that the mortgagee or assignee already has the legal estate.

3. A notice to quit, after a six months notice of the foreclosure and sale, was clearly not necessary. There was nothing like the relation of landlord and tenant existing between these parties. The assignee, holding the legal estate, was entitled to recover against any person holding under, or by title derived from the mortgagor, which was the case of this defendant.

The objection that the mortgage was not a valid instrument, upon any other ground than that of usury, ought not to be listened to when coming from the very man who had transferred it as a valid mortgage to the lessor of the plaintiff. To allow it, would be permitting the defendant to take advantage of his own fraudulent conduct.

Judgment for the plaintiff.