LE ROY MOWRY et al., Appellants, v. JESSE K. SANBORN et al., Respondents.

68   153
141   309

Where title to lands is claimed under the foreclosure of a mortgage by advertisement, the fact of the service of the notice of sale upon the mortgagor or other person affected by the proceedings may be shown, in support of the title, by any common-law evidence, in the absence of an affidavit showing such service.

The section of the Revised Statutes in reference to foreclosure by advertisement (§ 14, 2 R. S., 547), giving to the affidavits therein specified the effect of a deed cannot be so construed as to include an affidavit of service. The affidavits therein mentioned, when no deed has been executed, are evidence of foreclosure in the same manner and to the same effect as if a deed had been executed.

Since the passage of the act requiring service of notice of sale (§ 5, chap. 346, Laws of 1844) and that a copy shall be affixed in a book by the county clerk (chap. 308, Laws of 1857) the affidavits specified in said section are not alone evidence of a complete foreclosure, and the party claiming under the foreclosure is bound to show all the facts necessary to a valid sale before he can sustain title under it.

A mortgage was given to a bank to secure payment of any commercial paper, on which the name of the mortgagor appeared as maker, drawer or indorser then or thereafter held by the mortgagee, but "not to be security for over $3,000 at any one time." The mortgagor covenanted to pay the paper with interest thereon, and in case of non-payment the mortgagee was authorized to sell the mortgaged premises, and out of the proceeds "to retain all of the principal money and interest remaining unpaid." *Held*, that the mortgage was intended as security for $3,000 of the principal due on the paper held by the bank and the accrued interest thereon.

Such a mortgage is not given to secure unliquidated demands.

As to whether a mortgage given to secure unliquidated demands can be foreclosed by advertisement, *quære*.

A notice of sale as filed in the clerk's office and as published for the first four weeks was by mistake dated April 23, 1858, instead of 1868. *Held*, that the mistake was obvious on inspection, and could not have misled, and did not invalidate the proceedings.

The history of the legislation on the subject of foreclosure by advertisement, given.

*Mowry* v. *Sanborn* (7 Hun, 380) reversed.

(Argued December 13, 1876; decided January 16, 1877.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 7 Hun, 380.)

This was an action of ejectment to recover possession of premises situated in Sandy Hill, Washington county. It has been to this court once before, when it was heard and decided by the Commission of Appeals. (See mem. of decision, 65 N. Y., 581.)

Plaintiffs claimed title under a statutory foreclosure by advertisement of a mortgage executed by defendant and wife to plaintiff Mowry as president of the Washington County Bank and by it transferred to the Washington County National Bank; by whom the mortgage was foreclosed. The said bank became the purchaser, and subsequently conveyed to plaintiffs. The mortgage was for the sum of $3,000, and contained the following condition and covenant: "But this conveyance is made on this express condition, that if the said Jesse K. Sanborn, his heirs, executors, administrators or assigns shall and do pay to the said party of the second part, his successor, successors or assigns, the notes, drafts or other commercial paper of the said Jesse K. Sanborn, or on which his name appears as maker, drawer or indorser, now held and owned by said Washington County Bank, and shall also pay any notes, drafts or other commercial paper of said Sanborn, or on which his name shall appear as maker, drawer or indorser, which shall

be hereafter discounted, received, held or owned by said Washington County Bank; but this mortgage is not to be security for over three thousand dollars at any one time, and is not to extend to any paper received or discounted after three years from the date of this mortgage." "And the said Jesse K. Sanborn, for himself, his heirs, executors, administrators and assigns, covenants with the said party of the second part, his successor, successors and assigns to pay the said notes, drafts and other commercial paper, and the interest thereon at the times limited for the payment thereof as aforesaid; and that in case of non-payment of the interest, or any part thereof, at the time or times limited for the payment thereof, or within three days thereafter, then all the moneys hereby secured which remain unpaid, shall, at the election of the party of the second part, his successor, successors and assigns, become forthwith due and payable; and in case of the non-payment of said notes, drafts and other commercial paper, as above provided, or any part thereof, at the times limited for the payment thereof, it shall and may be lawful for the said party of the second part, his successor, successors or assigns, and the said party of the first part does hereby empower and authorize the said party of the second part, his successor, successors or assigns to sell the said premises, with the appurtenances or any part or parts thereof, in the manner prescribed by law, and out of the moneys arising from such sale or sales to retain all the principal money and interest remaining unpaid on said notes, drafts and other commercial paper, and the costs, charges and expense of making such sale."

Upon the trial the plaintiffs produced in evidence the affidavits, etc., in the foreclosure proceedings. The affidavit of service of notice of foreclosure was made by the attorney, who stated, in substance, that service was made upon defendant by mailing notice at Greenwich, addressed to him as follows: "Jesse K. Sanborn, Sandy Hill, Washington county, N. Y." The affidavit, after stating service of notice by mail upon other persons, contained this clause: "At that time each of said persons resided, as this deponent is informed and

believes, at the respective places to which their said notices were so addressed."

Plaintiff proved by parol evidence that defendant did reside at Sandy Hill at the time of service of notice, and the court so found.

The notice of sale stated the amount claimed to be due at $4,845.35. The notice of sale affixed to the book in the county clerk's office was so affixed April 24, 1868. It was dated April 23, 1858, and the notice as published for the first four weeks of publication bore the same date.

Defendant's counsel moved for a nonsuit and for judgment on the grounds, among others: 1. That the mortgage was given for unliquidated demands and could not be foreclosed by advertisement. 2. That the mortgage was only for $3,000, while the amount claimed was $4,845.35. 4. That there is no sufficient proof of service of notice on the mortgagor. 6. That the foreclosure not being in conformity to the statute, was void, which motion was denied. The court held that plaintiff did not have title.

*Samuel Hand* for the appellants. The court erred in holding that the affidavit of the person who served the notice of foreclosure must not only state the residence of the mortgagor, but the affiant's knowledge or sources of information in regard to it. (2 R. S., 546, §§ 3, 10, 12, 14; *Robinson* v. *Ryan*, 25 N. Y., 320; 62 Barb., 223–229; *Howard* v. *Hatch*, 29 id., 297; *George* v. *Arthur*, 2 Hun, 406; *Chalmers* v. *Wright*, 5 Robt., 713; 20 Barb., 566; *Jackson* v. *Colden*, 4 Cow., 266; *Hawley* v. *Bennett*, 5 Paige, 104; *Arnot* v. *McClure*, 4 Den., 44.) An affidavit of a fact as existing on information and belief of the affiant is *prima facie* proof of the fact. (*Union Bk.* v. *Mott*, 9 Abb., 106.) The objection that the notice claimed more than was due upon the mortgage and therefore the whole proceeding was void cannot be sustained. (*Brainard* v. *Jones*, 18 N. Y., 35; *Emerson* v. *Booth*, 51 Barb., 40, 44.) The mortgage was not for unliquidated demands. (*Butts* v. *Collins*, 13 Wend., 139, 156.)

The mistake in the date of the notice was merely clerical and will be disregarded as frivolous. (*Candee* v. *Burke*, 4 N. Y. Sup. Ct. R., 143 ; *Howard* v. *Hatch*, 29 Barb., 297 ; *Judd* v. *O'Brien*, 21 N. Y., 186.)

*Nathaniel C. Moak* for the respondent. The affidavit of service on defendant was defective. (*People* v. *Becker*, 20 N. Y., 354; *Robinson* v. *Ryan*, 25 id., 324; *Layman* v. *Whiting*, 20 Barb., 550 ; *Warren* v. *Tiffany*, 9 Abb., 66 ; *Dwight* v. *Phillips*, 48 Barb., 116–119 ; *Cole* v. *Moffit*, 20 id., 18 ; *People* v. *Overseers*, 15 id., 295 ; *Broadhead* v. *McConnell*, 3 id., 190, 191 ; *Whitlocke* v. *Roth*, 10 id., 78 ; *Eversten* v. *Thomas*, 5 How. Pr., 46 ; *Comfort* v. *Fulton*, 39 Barb., 56 ; *De Wearth* v. *Feldner*, 16 Abb., 295 ; *Ex parte Haynes*, 18 Wend., 611; *Blason* v. *Burns*, 33 Barb., 520 ; *Kelly* v. *Archer*, 48 id., 72; *Saton* v. *Reisenberger*, 25 How., 164 ; *Wortman* v. *Wortman*, 17 Abb., 67.) In the foreclosure of a mortgage by statute, the statute must be strictly pursued, and an omission to comply with any of its material requirements will render the foreclosure irregular and void. (*Lawrence* v. *Farmers, etc.*, 13 N. Y., 200 ; *Lockett* v. *Hill*, 1 Wood's C. C., 552 ; Potter's Dwarris, Rule 21, p. 146 ; *Powell* v. *Tuttle*, 3 N. Y., 396, 401 ; *Sharp* v. *Spear*, 4 Hill, 76, 84 ; *Thatcher* v. *Powell*, 6 Wheat., 119 ; *Sherwood* v. *Reade*, 4 Hill, 431; *Bloom* v. *Burdick*, 1 id., 141 ; *Sharp* v. *Johnson*, 4 id., 92, 99 ; *Striker* v. *Kelley*, 2 Den., 323, 330 ; *Van Slyke* v. *Sheldon*, 9 Barb., 278 ; *Doughty* v. *Hope*, 3 Den., 594; 1 N. Y., 79 ; *People* v. *Bd. of People*, 6 Abb., 162, 164 ; *Stanton* v. *Ellis*, 12 N. Y., 575, 578 ; *Ex parte* v. *Bk. of Monroe*, 7 Hill, 177 ; 10 N. Y., 329 ; 43 id., 107 ; 23 id., 285 ; 19 id., 496 ; 39 id., 196 ; 45 id., 781–784.) Parol proof was incompetent and inadmissible to supply the defect in the affidavit of service of notice of foreclosure. (2 R. S., 547, § 9 ; 2 Edm. Stat., 567 ; 2 R. S., 134, § 6 ; 2 id., 139 ; *Jackson* v. *Colden*, 4 Cow., 276 ; *Arnot* v. *McClure*, 4 Den., 44–46 ; *Wiles* v. *Peck*, 26 N. Y., 42 ; *Cohoes Co.* v. *Goss*, 13 Barb., 144 ; *Layman* v. *Whiting*, 20 Barb., 550 ; *Bryan* v. *Butts*, 27

id., 503 ; *Dwight* v. *Phillips*, 48 id., 116 ; *Tuthill* v. *Tracy*, 31 N. Y., 157 ; *Bunce* v. *Reed*, 16 Barb., 347 ; *Howard* v. *Hatch*, 29 id., 297 ; *Mowry* v. *Sanborn*, 62 id., 223 ; *Chalmers* v. *Wright*, 5 Robt., 713 ; *Arthur* v. *George*, 4 T. & C., 635 ; *Durgen* v. *Ireland*, 14 N. Y., 322 ; *Bonesteel* v. *Flack*, 41 Barb., 439.) A mortgage to secure unliquidated demands cannot be foreclosed by statute. (*Ferguson* v. *Kimball*, 3 Barb. Ch., 619 ; *Ferguson* v. *Ferguson*, 2 N. Y., 360 ; *People ex rel. Jackson* v. *Potter*, 47 id., 375 ; *Conklin* v. *Gandal*, 1 Keyes, 228.) The publication, posting, serving and affixing notices are all conditions precedent to a sale on foreclosure by advertisement. (*Morris* v. *Day*, 37 Me., 386 ; *Freeman* v. *Attwood*, 53 id., 473 ; *Hall* v. *Hall*, 22 U. C. (Q. B.), 578 ; affirmed, 2 Er. and Apps., 569 ; *Hazlett* v. *Hall*, 24 U. C. (Q. B.), 484 ; *Ely* v. *Carnley*, 19 N. Y., 496 ; *Van Slyke* v. *Sheldon*, 9 Barb., 284–286.) The mistake in the date of the notice of sale published rendered the foreclosure void. (*Miller* v. *Hall*, 4 Den., 104 ; *Treat* v. *River*, 53 Me., 71 ; *Olcott* v. *Robinson*, 20 Barb., 148.)

Andrews, J. This action has been twice tried. On the first trial the plaintiff recovered, on proving title in Sanborn ; a mortgage from him to the Washington County Bank, July 7, 1856 ; its assignment to the Washington County National Bank ; the affidavits in the foreclosure proceedings ; a deed from the bank (the purchaser on the mortgage sale) to the plaintiff ; and that the defendant was in possession of the premises. The plaintiff upon this proof, maintained his right of action, provided the affidavits showed a compliance with the statute relating to the foreclosure of mortgages by advertisement. The judgment on the first trial was reversed by the Commission of Appeals, on the ground that the affidavit of service of the notice of sale upon the mortgagor and others, did not show that service had been made as required by the statute. The affidavit was made by the attorney who conducted the foreclosure, and it alleged a service, by mail, upon the mortgagor, and other persons, of the notice of sale, by

depositing notices in the post-office addressed to the persons named at the places mentioned, and that at the time " each of the said persons resided, as the deponent is informed and believes, at the respective places to which the said notices were so addressed."

The notice to the mortgagor was, as appears by the affidavit, mailed at Greenwich, directed to him at Sandy Hill, and the only evidence that he resided there, given on the former trial, was the statement in the affidavit made upon the information and belief of the affiant. The Commission of Appeals (Earl, C., dissenting) held, that this was not competent or legal evidence of the fact, and that the case stood without proof that notice of the sale had been served on the mortgagor, and consequently, that the plaintiff had failed to establish a valid foreclosure of the mortgage.

On the last trial the judge permitted oral evidence to be given, that the mortgagor resided at Sandy Hill, where the notice mentioned in the affidavit was mailed, and the judge found as a fact that he then resided at that place ; but on the final decision of the case he disregarded this evidence and refused to consider it, on the ground that oral evidence of the residence of the mortgagor was not admissible to establish the regularity of the foreclosure or to supply the defect in the affidavit of service; and judgment was given for the defendant, which was affirmed by the General Term, and is now before us for review.

The principal question in the case is the one already suggested, viz., was evidence admissible to prove that the mortgagor resided at Sandy Hill when the notice was mailed ? or, the question involved is still more comprehensive, viz., when title is claimed under the foreclosure of a mortgage, by advertisement, may the fact of the service of notice of sale, upon the mortgagor or other persons affected by the proceedings, be shown in support of the title, by any competent common-law evidence, in the absence of an affidavit showing such service ? The right of a mortgagee to extinguish the equity of redemption by a sale of the land without judicial proceedings or the

decree of the court, depends upon the existence of a power of sale in the mortgage or other instrument executed by the mortgagor. If a power of sale is not given, the mortgagee must resort to a court of equity to enforce the mortgage. This principle of the common law has been retained in the statute for the foreclosure of mortgages, by advertisement, which only authorizes this proceeding in cases where the mortgage contains a power of sale. (2 R. S., 545, § 1.)

In the absence of a statute regulating the mode of executing the power the mortgagee may sell the land at public or private sale, unless the particular manner of sale is prescribed by the instrument creating the power (*Davey* v. *Durant*, 1 De Gex and J., 535; 2 Wash. on Real Prop., 77), in which case the mortgagee must, in executing the power, conform to the conditions imposed. The mortgagee could not at common law become the purchaser on a sale made by himself under the power, or at least such a sale was voidable at the election of the mortgagor. He could not at the same time be a trustee of the power of sale, and a purchaser under it. (1 Sug. on Vend., 94; 3 id., 229; Wash. on Real Prop., 77.) And, where a sale was made under the power a deed from the mortgagee to the purchaser was necessary to pass the title. (*Arnot* v. *McClure*, 4. Den., 44.)

The mortgagee under the law of England has the legal title to the mortgaged premises, and under our law it remains in the mortgagor until foreclosure, but in either case a deed is necessary to satisfy the statute of frauds, and to vest the title in the purchaser, unless the legislature has interfered and created an exception, or has substituted some other evidence of title in place of a common-law conveyance.

When a power of sale is given to be executed under certain conditions, or its execution is made by the terms of the power to depend upon the performance of precedent acts, and the validity of a conveyance made in assumed execution of the power is in question, oral evidence of a compliance with the conditions, is admissible, unless such proof is excluded by the nature of the conditions imposed, or the terms of the power.

In *Hawley* v. *Bennett* (5 Paige 104), entries in the register of an attorney, who conducted a foreclosure by advertisement, were admitted after his death in support of the title under a deed given on the foreclosure, to show a compliance with the statute, and the circumstances of the sale. The foreclosure was before the statute of 1808, which made affidavits of the parties, etc., *prima facie* evidence, and in *Arnot* v. *McClure*, Bronson, Ch. J., says : " Before we had any such statute the regularity of the proceedings could only be established by common-law evidence ; and any kind of common-law evidence was admissible." When title to real estate is claimed under a conveyance purporting to be made in execution of a power, which by its terms is to be exercised in a certain event or after notice to the grantor or third person, or the doing of any other act by the grantee of the power, oral evidence of the happening of the event or of the performance of the condition precedent, does not add to, vary, or contradict the deed, but is consistent with it, and is admissible to show that the grantee of the power acted within his authority.

The statute for the foreclosure of mortgages by advertisement was passed to regulate the mode of executing the power of sale, when given in the mortgage. The statute as originally enacted, provided for notice of the sale to be given by publication and posting (1 R. L., 376), and in 1844, the statute was amended by requiring in addition, that the notice should be served personally or by mail on the mortgagor (chap. 346, Laws of 1844, § 5), and in 1857 the statute was further amended providing that a copy of the notice should be delivered to the county clerk, to be affixed in a book in his office, and that an entry of the time of receiving and affixing it should be made. (Chap. 308, Laws of 1857.) All these several acts required to be done, were parts of the notice to be given, and were to be performed prior to the sale, at the times specified in the statute. These statute requirements were conditions precedent to a valid sale under the power and have the same effect as if they were inserted in the mortgage, and a person claiming title under a statute

foreclosure, assumes the burden of showing that they were performed. But unless the statute has otherwise provided, it seems not to admit of doubt that the publication, posting and service of notice on the mortgagor and other persons can be proved by oral testimony, in fact this would usually be the only available proof. The legislature, by an act passed in April, 1808, first made the affidavits of the printer, etc., when recorded, *prima facie* evidence of the publication and posting of the notice of sale, and of the circumstances of the sale. This was an innovation upon the common-law rules of evidence, and the object of the statute was to enable the purchaser to perpetuate the evidence of the facts upon which the validity of the sale depended. The same statute authorized the mortgagee to purchase, and both of the provisions referred to were embodied in the act concerning mortgages. (Chapter 22 of the Laws of 1813; 1 R. S., 374, §§ 7–10.) The sixth section of that act contemplates that a deed should be given to the purchaser on the sale, and until the act of 1838, which will be hereafter referred to, this was necessary to pass the title, except where the mortgagee was the purchaser. In that case no deed could be given, as the mortgagee could not convey to himself, but as the statute expressly recognized his right to purchase, and made no provision for a conveyance, the court held in *Jackson* v. *Colden* (4 Cow., 266), that on a purchase by the mortgagee, the title passed by force of the statute, without a deed. Some effect appears to have been given to the fact that affidavits had been made and recorded, showing a sale to the mortgagee.

In the revision of 1830, an entirely new provision was inserted in the statute, being section 12, now section 14, for the purpose, as the revisers say, of removing doubts which had been excited respecting the evidence of title acquired on a purchase by a mortgagee, and to "declare the law as now understood." (5th Ed. St., 764.) That section as originally passed provided that when the mortgaged premises were purchased on the sale by the mortgagee, his legal representatives or assigns, the "affidavits of the publication and affixing notice

of sale, and of the circumstances of the sale, shall be evidence of the sale and of the foreclosure of the equity of redemption as herein specified, without any conveyance being executed, in the same manner, and with the like effect as a conveyance executed by a mortgagee upon such sale to a third person." This section came under the consideration of the court in *Arnot* v. *McClure.* In that case the assignee of a mortgage, foreclosed it under the statute and became the purchaser, and affidavits of publication and posting of the notice, and of the circumstances of the sale were made and recorded. In the affidavit of the circumstances of the sale, the boundaries of the property sold as therein given, did not embrace a portion of the mortgaged premises, and oral proof was offered to show, that in fact, the whole premises were sold, and that the portion not embraced in the description in the affidavit was by mistake omitted. The proof was rejected on the trial, and on appeal the ruling was affirmed. The court held, in an opinion by BRONSON, Ch. J., that affidavits were necessary to complete the title when the mortgagee or his assignee was the purchaser on the foreclosure; that in that case, as no deed could be given, the affidavits were, by the true construction of section 14, to have the force and effect of a conveyance by the mortgagee to a third person, " and to perform the double office of proving the regularity of the proceedings to foreclose, and standing as a conveyance to the purchaser;" and from these provisions the conclusion was reached that the mortgagee, or his assignee, could not be permitted, by oral proof, to contradict, impeach, or supply an omission or defect in the affidavits " any more than he could a conveyance by deed." Section 14 was an important addition to the previous law. As construed in *Arnot* v. *McClure* it resolved the doubt which existed under the statute as it previously stood, and affirmed the general policy of the law which does not permit a title to real estate to pass without a conveyance in writing, by declaring that the affidavits mentioned should, when the mortgagee became the purchaser, stand for a conveyance of the land. This section was

amended, in 1838, by allowing a substitution of the affidavits, specified therein, in all cases, in place of a deed; but when the purchaser was a third person a deed might still be given and the title supported by oral proof of a compliance with the provisions of the statute. (*Arnot* v. *McClure.*)

In the case now before us the assignee of the Sanborn mortgage became the purchaser on the foreclosure; affidavits of the publication and posting of the notice of sale and of the circumstances of the sale were made and recorded and were produced on the trial, together with the affidavit of notice of service on the mortgagor, which the Commission of Appeals decided to be defective in the respect before mentioned. It is very clear, I think, that oral proof was admissible to establish the omitted fact, viz., that the mortgagor, when the notice was served, resided at Sandy Hill, unless the affidavit of service was a part of the statute conveyance provided for in section 14. It cannot be so held unless we can incorporate into that section, with the other affidavits mentioned, the affidavit of service which was first provided for in 1844; and if this can be done, the affidavit of affixing the notice in the books of the county clerk, provided for by the act of 1857, must also be deemed included. Neither of these affidavits are specified in the section. If, when section 14 was passed, notice had been required to be served on the mortgagor and to be put in the books of the clerk, it is very probable that the affidavits of these facts would have been made a part of the statute conveyance. It would certainly contribute to the symmetry and completeness of the system, and to the security of foreclosure titles, that all the prerequisites to a valid foreclosure should be shown by affidavits, and made a part of the statutory title. But we can see no justification for construing section 14 as it stands, as if the affidavits of service and of affixing notice in the books of the clerk, were mentioned in it. The argument that such a construction would be a protection against frauds and prejudices, will not justify it. In *Tuthill* v. *Tracy* (31 N. Y., 157), it was held that a sale made pursuant to the statute

bars the equity of redemption, without affidavits being made, and if now a deed is given on the sale, without affidavits, the facts (according to the opinion in *Arnot* v. *McClure*) of publication, posting, etc., may be established by oral evidence. In each of these cases the danger of fraud and perjury, is the same as is suggested here.

The production of the affidavits mentioned in section 14, without proof of service on the mortgagor, or of affixing notice in the clerk's office, are not, since the amendments of 1844 and 1857, evidence of a complete foreclosure. By the eighth section, it is a sale conducted as " herein prescribed," which bars the equity of redemption, and the party claiming title under the foreclosure would be bound to show all the facts necessary to a valid sale before he could recover under it, and we think the true construction of the fourteenth section in this respect is, that the affidavits therein mentioned, when no deed has been executed, are evidence in the same manner, and to the same extent of a foreclosure as they would be if a deed had been executed.

We are of opinion, for the reasons stated, that the oral evidence of the residence of the mortgagor at the time the notice was served was competent and should have been considered by the learned judge on the trial.

There are several other objections to the foreclosure which will be briefly considered :

First. The amount claimed in the notice of sale, to be due on the mortgage at the time of the first publication, was $4,845.35. It is insisted that only $3,000 was secured by, or could be collected on, the mortgage, and that the sale was void by reason of the excessive claim made in the notice. Without considering whether the claim of a much larger amount to be due than was due, would, in the absence of fraud, invalidate the proceedings, we are of opinion that it does not appear that the amount claimed was more than was secured by the mortgage. The mortgage was given to secure the commercial paper of the mortgagor, or paper on which his name appeared as maker, drawer or indorser, then held by

the bank, or which should thereafter be discounted, or held by the bank, and the condition contains this clause; "but this mortgage is not to be security for over $3,000, at any one time, and is not to extend to any paper received or discounted after three years from the date of this mortgage." The mortgage was collateral to a bond in the penalty of $6,000. The mortgagor covenants in the mortgage to pay the paper held by the bank when it becomes due and the interest thereon, and in case of non-payment at the times limited, etc., the mortgage authorizes the bank to sell the mortgaged premises, and out of the moneys arising on the sale "to retain all the principal money and interest remaining unpaid on said notes."

The mortgage was dated in July, 1856, and the notice of foreclosure was first published in April, 1868. We think the clear meaning and intention was, that the mortgage should be security for $3,000 of the principal due on the paper held by the bank and the accrued interest thereon, and upon this construction it does not appear that the amount claimed in the notice exceeded the amount secured and unpaid on the mortgage. (See *Brainard* v. *Jones*, 18 N. Y., 35.)

Second. The mortgage was not given to secure unliquidated demands. (*Butts* v. *Collins*, 13 Wend., 156.) The liability of the mortgagor secured by the mortgage, was a liability then existing, or which should be incurred upon commercial paper. The extent of the liability could be ascertained by inspection of the paper, and a computation after crediting payments made. As the claim was not unliquidated, it is unnecessary to determine whether the statute authorizes a foreclosure by advertisement of a mortgage given to secure an unliquidated demand.

Third. The mistake in the date of the notice filed in the clerk's office, and as first published, were obvious on inspection of the notice, and could not have misled and did not invalidate the proceedings.

Fourth. It did not appear affirmatively that the affidavit of publication was untrue, or that due publication had not been made.

We think the judgment should be reversed on the point first considered, and a new trial granted.

All concur.

Church, Ch. J., Allen and Rapallo, JJ., were also of opinion that the affidavit of service was sufficient.

Judgment reversed.