URI C. VAN VLECK and Others, Respondents, *v.* EMILUS J. ENOS and Others, Appellants.

*Foreclosure by advertisement — statute to be strictly followed — defective affidavits — before whom verification of affidavit of sale may be made — common-law proof of sale — what makes a person merely a mortgagee — as such he cannot bring an action of ejectment — what title passes upon an administrator's sale of real estate — proof of bona fides by a purchaser.*

A compliance with the statutory requirements relating to foreclosure by advertisement is a condition precedent to a valid sale under the power contained in the mortgage; such requirements have the same effect as if they were incorporated into the mortgage.

A person claiming title under a foreclosure and sale by advertisement assumes the burden of showing that the statutory requirements were complied with.

Where the affidavits relating to such a sale, had in 1869, fail to show that the clerk entered in the book in which notices of foreclosure and sale were affixed, at the bottom of the notice, the time of receiving and affixing the same or that he subscribed it or that he indexed the notice under the name of the mortgagor, the affidavits are materially defective and show no title in the purchaser.

Where the statute enumerates the officials who are authorized to take the affidavit of the person who acted as auctioneer at the sale, no person other than one of such officials has power to act in the premises.

A sale in foreclosure by advertisement may be shown to be valid by common-law proof, but such proof must positively establish all the facts required by the statute to be stated in the affidavit of sale.

In an action of ejectment it appeared that the plaintiff's title grew out of the following facts: Dewitt C. Enos, owner of the premises in question, had given a mortgage upon them which was unpaid at the time of his death ; that an agreement was made between the widow of Dewitt C. Enos, her father, Alanson Trask, and the defendant Emilus C. Enos, by which the mortgage was to be purchased by the widow and Emilus,. foreclosed, and the title transferred to some other person for the purpose of divesting the title which 'the infant children of the decedent had in the premises. The mortgage was purchased and assigned to Alanson Trask who foreclosed it by advertisement. The premises were sold in 1869, and bid off by Eneas E. Enos (a son of the defendant Emilus J. Enos), under an agreement made between himself, Emilus J. Enos' and Alanson Trask, by which Eneas E. was to bid off the premises for Emilus J., execute a mortgage to the widow for her advances, retain the title as security for his own, and upon repayment convey the premises to his father, Emilus J. Enos. The mortgage was executed to the widow, but Eneas E. Enos never conveyed to his father, who remained in possession of the premises until the commencement of the present action of ejectment.

In December, 1886, Emilus J. Enos made a general assignment, and in September, 1887, his assignee sold his interest in the premises to the children of Dewitt C. Enos, who are defendants. They received a deed conveying such interest October 29, 1887, which was recorded January 6, 1888.

Eneas E. Enos having died in November, 1886, insolvent and without heirs, proceedings were taken in a Surrogate's Court to sell his real estate for his debts and funeral expenses, and the premises in question were sold to the plaintiffs in March, 1888, and the deed of the administrators to them was recorded April 18, 1888.

Thereafter the plaintiffs brought an action of ejectment and recovered a verdict for the possession of the premises in question.

*Held,* that under the agreement by which Eneas E. Enos purchased the premises his interest was only that of a mortgagee entitled to be repaid his advances, and that he could not have maintained an action of ejectment; '

That the sale of the premises by the administrators of Eneas E. Enos to the plaintiffs conveyed only the interest which the decedent had in the premises at the time of his death, which was that of a mortgagee;

That even should it be assumed that a purchaser in good faith could cut off the equities of Emilus J. Enos and those claiming under him, and acquire a better title than Eneas E. Enos had at the time of his death, the plaintiffs had not, upon all the facts of the case, shown themselves to be purchasers in good faith and without actual or constructive notice.

APPEAL by the defendants, Emilus J. Enos and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Madison on the 9th day of May, 1894, upon the verdict of a jury rendered after a trial at the Madison Circuit, and also from an order entered in said clerk's office on the 19th day of April, 1894, denying the defendants' motion for a new trial made upon the minutes.

The action was begun May 14, 1888.

*N. Foote, A. A. Foote* and *C. A. Hitchcock,* for the appellants.

*Mason & Cushman* and *John E. Smith,* for the respondents.

MARTIN, J.:

This was an action of ejectment to recover the possession of a farm situated near the village of Hamilton, N. Y.

The plaintiffs' alleged title is based upon the claim that Dewitt C. Enos owned the premises and gave a mortgage thereon, which, after his death, was foreclosed and the farm was purchased by Eneas E. Enos, who thereupon became the owner; that after the death of Eneas E. Enos proceedings were instituted by his administrators to sell his real estate for the payment of his debts, which resulted in a sale of the premises to the plaintiffs and others, and that under and by virtue of such sale they acquired the title in fee to the farm in question.

The defendants, however, claim that the mortgage given by Dewitt C. Enos was never properly foreclosed, and hence no title whatever passed to Eneas E. Enos; that if it was properly foreclosed it was purchased under an express arrangement or agreement whereby Eneas E. Enos took only a mortgage interest in the premises while the fee belonged to Emilus J. Enos; that subsequently Emilus J. Enos became insolvent, made a general assignment for the benefit of his creditors; that his assignee sold the interest of Emilus J. Enos in the premises, which was purchased for and belongs to the defendants Alanson T. Enos, Frank Enos and Hetty

Mitchell; and as the only title that Eneas E had, or that the plaintiffs acquired, was that of a mortgagee, that neither Eneas nor the plaintiffs could maintain this action.

At the time of his death Dewitt C. Enos was the owner of the premises in question subject to a mortgage upon which there was then unpaid $2,500. He died December 14, 1868. At that time the premises were worth about $8,000. His wife and three infant children survived him. His widow was appointed administratrix of his estate. After his death a plan was devised by and between the widow of Dewitt C. Enos, Alanson Trask, her father, and Emilus J. Enos, a brother of the decedent, by which the mortgage upon the premises was to be purchased by the widow and Emilus, foreclosed and the title transferred to some other person for the purpose of divesting the title which the defendants Alanson T. Enos, Frank Enos and Hetty Mitchell, the then infant children of the decedent, had in the premises.

In pursuance of this plan the widow of Dewitt C. Enos furnished $1,000 of the funds belonging to his estate, and Eneas E. Enos, a son of Emilus J. Enos, furnished $1,500 for the purpose of purchasing the mortgage upon the premises, foreclosing it, and thus divesting the title of the infant children of the decedent in the premises. The mortgage was purchased and assigned to Alanson Trask, who immediately commenced proceedings to foreclose it by advertisement. The premises were sold June 28, 1869, for $2,528, and bid off by Eneas E. Enos, under an agreement which had been made between himself, Emilus J. Enos and Alanson Trask, by which Eneas E. was to bid off the premises for Emilus J., hold them as security for the $1,500 furnished by him to purchase the mortgage, give a mortgage to Anna F. for the $1,000 she had advanced, and give to Emilus J. a defeasance to convey the premises to him when he, Eneas E., was paid the $1,500 advanced, with interest. Such a defeasance was subsequently executed under seal, acknowledged and delivered to Emilus J. Enos, and a mortgage for $1,000 was executed and delivered to Anna F. Enos. The premises continued in the possession, under the management and control of Emilus J. and his wife, and they received the entire proceeds thereof, until the commencement of this action. The premises were never conveyed by Eneas E. to his father, Emilus J.

In December, 1886, Emilus J. made a general assignment for the benefit of his creditors. September 10, 1887, his assignee sold all his right, title and interest in the premises in question, which was purchased for the children of Dewitt C. Enos, to whom a deed was given October 29, 1887, which was recorded January 6, 1888.

November 24, 1886, Eneas E. Enos died insolvent and intestate, leaving a widow but no children. His widow and David C. Mott were appointed administrators of his estate. Subsequently, proceedings were instituted in Surrogate's Court to sell the real estate of Eneas E. Enos for the payment of his debts. Under those proceedings the premises in question were sold March 30, 1888, to the plaintiffs and two other persons who have since died, and an administrator's deed in the usual form was given to the purchasers and recorded April 18, 1888.

The evidence discloses that the purpose of the foreclosure and sale under the mortgage was to change the title to the property from the infant children of Dewitt C. Enos to some one else, so as to provide a home or secure the property for Emilus J. and his wife. While it is true that this was to be principally at the expense of the infants who were incompetent to consent, yet that the widow, or Trask, who was their grandfather, intended to deal fraudulently or unjustly by them, is not to be supposed. The result of the transaction to the infants was the same, however commendable the motive may have been. The purpose of this transaction and the manner in which it was carried into execution were well known to the widow, Trask, Emilus J. and Eneas E.

In the first place, the plaintiffs' title and right of recovery are dependent upon the validity of the mortgage foreclosure. If that was invalid, obviously this judgment cannot be upheld. The appellants contend that the foreclosure proceedings were void, and consequently the judgment should be reversed. In foreclosure by advertisement, the statute as it stood in 1869 required that a copy of the notice of foreclosure and sale should be delivered at least twelve weeks prior to the time specified for the sale to the clerk of the county in which the premises were situated, who should immediately affix the same in a book prepared and kept by him for that purpose, and that the clerk should also enter in said book, at the bottom of such notice, the time of receiving and affixing the same, duly

subscribed by him, and should index such notice to the name of the
mortgagor.    The affidavits of foreclosure and sale are the only
evidence the plaintiffs have of their title to the premises.    No deed
was given.    The affidavits contain no proof that the clerk entered
in the book in which notices of foreclosure and sale were affixed, at
the bottom of the notice, the time of receiving and affixing the
same, or that he subscribed it or indexed the notice to the name of
the mortgagor.    As to these requirements of the statute the affi-
davits are silent, and no other evidence was given upon the trial to
show that these provisions of the statute were complied with.

In *Mowry* v. *Sanborn* (68 N. Y. 153, 161), where a history of
proceedings for the foreclosure of mortgages by advertisement was
given, and the requirements of the statute on that subject were
considered, after stating what the requirements of the statute were,
that among others a copy of the notice should be delivered to the
county clerk, to be affixed in a book in his office, and that an entry
of the time of receiving and affixing the same should be made,
ANDREWS, J., said : " All these several acts required to be done
were parts of the notice to be given, and were to be performed
prior to the sale, at the times specified in the statute.    These stat-
ute* requirements were conditions precedent to a valid sale under the
power, and have the same effect as if they were inserted in the
mortgage, and a person claiming title under a statute foreclosure*
assumes the burden of showing that they were performed."

" Statutory foreclosure, or foreclosure by advertisement, is exclu-
sively a creature of legislative enactment ;    *    *    *    every require-
ment of the statute must be strictly complied with, as failure to
comply with any of its material directions will render the fore-
closure irregular and void."    (Wiltsie on Mortgage Foreclosures, p.
879, § 768, and cases cited in note.)

The respondents' contention, that the entry in the book kept by
the clerk for the affixing of such notices of the time of receiving
and affixing the notice subscribed by the clerk, and the indexing
such notice to the name of the mortgagor, were immaterial and
unessential requirements, and need not be proved to establish the
validity of the foreclosure, cannot, we think, be sustained.    The

---

*Sic.*

entry in such book of the time of receiving and affixing the notice, the subscription by the clerk, and the indexing of the notice to the name of the mortgagor, are among the requirements of the statute, and are made a part of the act of affixing the notice in the book kept by the clerk. It would not be contended, we apprehend, that if the notice had not been in any manner affixed in the book kept by the clerk, the proceedings would be regular and the foreclosure valid. If to affix the notice in the book is material and necessary to a valid proceeding, it would seem that it should be affixed in the manner required by the statute, which includes the entry of the time when received and affixed, subscribed by the clerk, and that it should be indexed to the name of the mortgagor. This omission was a material one, and as there was no evidence except the affidavit as to the manner of affixing such notice, it was, we think, insufficient to show that the requirements of the statute had been complied with.

Another objection to the validity of the foreclosure rests in the fact that the affidavit of the person who officiated as auctioneer at the sale was not verified before an officer authorized to take it. It was taken before the deputy clerk of the county of Madison. The statute regulating the foreclosure of mortgages by advertisement as it then stood provided that the affidavit might be taken and certified by any judge of a court of record, any Supreme Court commissioner, any commissioner of deeds, or a justice of the peace. (2 R. S. 547, § 11.) There was no provision of statute which authorized even the county clerk to take such an affidavit. *Craft* v. *Merrill* (14 N. Y. 456) tends to sustain the appellants' theory that the affidavit was not properly verified When we consider the provisions of the section above referred to, and examine section 49 of title 2 of chapter 3 of part 3 of the Revised Statutes (2 R. S. p. 284), which conferred upon county clerks all the powers to take affidavits which they possessed at the time this affidavit was taken, and find that such oaths as were required by law to be taken before particular officers were excepted, it is quite obvious that the deputy clerk had no authority to take the affidavit in question.

It is contended by the respondents, however, that the question whether the affidavit of sale was or was not sufficient is immaterial, because the sale was proved to have taken place. It was

competent to prove the sale by common-law evidence. (*Mowry* v. *Sanborn*, 68 N. Y 153.) The statute required proof of the time and place at which the sale took place, the sum bid and the name of the purchaser. It is true the witness Foote testified that he thought he followed the statutory proceedings and went through the regular form of foreclosure, and that his other evidence tended to show that a sale took place; yet we fail to find sufficient, positive evidence of the facts required by the statute to be stated in the affidavit of sale to render it clear that the matters required to be stated in the affidavit, were proved as distinctly and clearly as was necessary to sustain the validity of such foreclosure.

We are, therefore, of the opinion that the evidence was insufficient to justify the court in holding or the jury in finding that the plaintiffs acquired a valid title to the premises through or under such foreclosure and sale.

If, however, it should be held that the proof of the foreclosure and sale under the mortgage was sufficient, still it is quite obvious from the evidence that the title to the premises was to vest in Eneas E. Enos for a special purpose only, which was that he should execute a mortgage to Anna F. Enos for the $1,000 furnished by the estate of Dewitt C. Enos to purchase the mortgage foreclosed, retain the title subject to such mortgage as security for the payment of the money advanced by him for the same purpose, and upon repayment convey the premises to Emilus J. Enos. That as between the parties Eneas E. Enos acquired only a mortgage interest in the premises, there is, we think, no doubt.

A deed absolute in form, but in fact given simply as security for a debt, does not convey the title, but is, both at law and in equity, a mortgage only. (*Barry* v. *Hamburg-Bremen Fire Ins. Co.*, 110 N. Y. 1.) The rule that a deed absolute upon its face can in equity be shown, by parol or other extrinsic evidence, to have been intended as a mortgage, has been, upon the fullest consideration, deliberately established by the decisions in this State, and will not, it seems, be departed from. (*Horn* v. *Keteltas*, 46 N. Y. 605.) One claiming under a conveyance, in form a deed, but given as a mortgage, cannot maintain ejectment against the grantor or any other person, and a reconveyance by the grantee to the grantor is not necessary to reinvest the latter with the absolute title; it is

necessary only to clear up the record title. (*Shattuck* v. *Bascom*, 105 N. Y. 39.) To establish that a conveyance or transfer of property, absolute on its face, was intended as a mortgage, and to give it effect as such, it is not material that the conveyance should be made by the debtor or by him in whom the equity of redemption is claimed to exist. Whenever property is transferred, no matter in what form or by what conveyance, as a security for debt, the transferee takes merely as a mortgagee. (*Carr* v. *Carr*, 52 N. Y. 251.) The fact that a conveyance vests the legal title in the grantee is not decisive of the question whether it was an equitable mortgage. It may be a mortgage, although the defeasance be to another than the grantor. (*Pardee* v. *Treat*, 82 N. Y. 385.) There are many other cases holding the doctrine of those cited, but as these principles seem to be well established in this State we deem it unnecessary to cite further authorities. As the premises in question were purchased at the mortgage sale for the benefit of Emilus J. Enos and the title given to Eneas E. Enos to secure him for the money advanced for the purchase of the mortgage, and to give a mortgage thereon to secure the $1,000 advanced for the same purpose by the widow of Dewitt C. Enos, it is manifest that the title or equity in the premises was to belong to Emilus J. Enos; that it was held by Eneas E. Enos in trust for him, and that as such trustee he was authorized to execute the mortgage to Anna F. Enos. The giving of this mortgage did not, we think, in any way affect the relation of the parties or change that of Eneas E. Enos from that of mortgagee holding the equity or legal title in trust for Emilus J. Enos. (*Stoddard* v. *Whiting*, 46 N. Y. 627.) The principle of the cases cited fully sustains our conclusion that the only interest that Eneas E. Enos acquired to the premises in question was that of a mortgagee, and that he could not as such have maintained an action of ejectment.

This brings us to the consideration of the question whether the plaintiffs have any other or better title than Eneas E. Enos possessed at the time of his death. As we have already seen, the plaintiffs claim to have acquired their title to the premises by virtue of an administrator's sale for the payment of the debts and funeral expenses of Eneas E. Enos. The statute under which these proceedings were instituted provides only for the sale of the real property

of which the decedent died seized, and the interest of a decedent in real property, held by him under a contract for the purchase thereof, made either with him or with a person from whom he derived his interest. It also provides that a sale, pursuant to statute, vests in the grantee all the estate, right and interest of the decedent in the real property so conveyed at the time of his death free from dower not assigned, but subject to all subsisting charges by judgment, mortgage or otherwise which existed at the time of his death. (Code, §§ 2749, 2778.) The evidence discloses that Eneas E. Enos was never in fact seized of the premises in question, but that the only interest he possessed was that of a mortgagee, who held the legal title as security for the payment of his debt. Under these circumstances it is difficult to find any justification in the statute for the sale of these premises under the proceedings instituted by the administrators as the decedent was not seized of them at his death. It may be that in a proper action the plaintiffs would be entitled to recover the interest which Eneas E. had in the premises, but that question is not here. Even if the sale was authorized the only estate, right or interest which would vest in the grantee under such a conveyance would be that which the decedent had in the property at the time of his death (*Matter of the Executors of Dolan*, 88 N. Y. 309, 322); and as the only estate, right or interest that he had was that of a mortgagee it would seem to follow that if the plaintiffs succeeded to that interest they could not maintain this action. It may be that, as between Eneas or Emilus and a third person who was a purchaser in good faith and for value, Eneas was to be considered as the legal owner of the premises, and the purchaser would obtain a title to which the equity of Emilus would not attach; but if the purchase was with notice, the purchaser would be in no better position than his grantor, and his deed would be at most an assignment of Eneas' interest in the property. If, therefore, we are incorrect in our conclusion that under the statute no greater right could be sold than that possessed by the decedent at the time of his death, and the purchaser acquired the legal title to the premises upon recording his conveyance, then the question whether the plaintiffs were purchasers in good faith properly arises. Upon that question much evidence was given. It was shown that Emilus J. Enos and his wife were in actual, open and visible possession of the premises,

Fourth Department, July Term, 1895.　　　　[Vol. 88.

and had been so possessed of them for many years. This was constructive notice of the interest of Emilus J. in the premises, and was sufficient to put the plaintiffs upon inquiry to ascertain what the rights of the defendants were in the premises. (*Bassett* v. *Wood*, 55 Hun, 587, and cases cited in opinion.)

Again, the premises were sold by the assignee of Emilus J. in September, 1887, and purchased for the children of Dewitt C. Enos, to whom a deed was given, which was recorded January 6, 1888, more than two months before the premises were sold to the plaintiffs, and more than three months before their deed was recorded. The proof also disclosed that some of the plaintiffs and the attorney who was acting in the matter for all, acquired information in regard to the interest of the children of Dewitt C. Enos in the premises, and as to the interest of Emilus J. therein, which, if credited, was sufficient to show that the plaintiffs were not purchasers in good faith. On the other hand, the plaintiffs introduced evidence which tended to show that some of them were informed by Emilus J. that he had no title to the premises, and that information as to the rights of the defendants was sought from one of the attorneys who foreclosed the mortgage, and who was the attorney for the assignee of Emilus J., and that no information showing that the title of Eneas was less than the legal title to the premises subject to the $1,000 mortgage could be obtained.

That at or about the time when it was offered for sale by the administrators, any of the plaintiffs made direct inquiry of Emilus J. or his wife as to their interest in the farm, for the purpose of ascertaining if they had any interest therein, is not pretended. The statements which were proved to have been made by Emilus J. were made at other times, and had no relation to this sale. Indeed, as to most of the plaintiffs they made no effort to ascertain what rights Emilus J. and his wife had in the premises, although such plaintiffs knew that Emilus J. and his wife were in actual, open and visible possession thereof. Nor was any effort made by them to ascertain the rights therein of the defendants Alanson T. Enos, Frank Enos and Hetty Mitchell, although they had a deed of the premises which had been recorded more than two months prior to the time of the administrator's sale, which was known to some of the plaintiffs independent of the record, and some of them were informed that the fore-

closure sale was in fraud of the rights of the children of Dewitt C. Enos. It may be that as to some of the plaintiffs the court was justified in submitting to the jury the question whether they were purchasers in good faith and for value, and yet, as the burden of proof was upon them to show they were such purchasers ( *Westbrook* v. *Gleason*, 79 N. Y. 23 ; *Seymour* v. *McKinstry*, 106 id. 230), an examination of the whole case renders it so improbable that they had neither constructive nor actual notice of the rights of the defendants in the premises as to lead us to the conclusion that as to them the verdict of the jury was against the weight of the evidence. As to the other plaintiffs, the evidence was insufficient to justify the submission to the jury of the question whether they were purchasers in good faith. In other words, we are of the opinion that the plaintiffs have not sufficiently borne the burden of showing that they were purchasers in good faith, and for value to justify us in upholding the judgment herein upon the ground that they, as such, acquired a greater or better title than that possessed by Eneas E. Enos at the time of his death. These views lead us to the conclusion that the judgment should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed on the facts and law, and a new trial granted, with costs to abide the event.