### In re TIETJE.

(District Court, E. D. New York. February 24, 1920.)

1. BANKRUPTCY ⬤—267—COUNSEL FEE ALLOWED AGAINST FUND FROM SALE OF REAL ESTATE.

Counsel for a trustee allowed a fee as a charge against the fund arising from a sale of real estate in which both bankrupt and the estate of an insolvent decedent held an interest, where his services were for the benefit of both classes of creditors.

2. BANKRUPTCY ⬤—267—EXPENSES OF SALE OF REAL ESTATE OWNED IN PART BY BANKRUPT CHARGEABLE AGAINST PROCEEDS.

Advances made by a trustee and other expenses in connection with the sale by the bankruptcy court of real estate in which bankrupt owned an interest held chargeable against the proceeds.

3. ESTATES ⬤—10(4)—MERGER OF DOWER AND FEE CANNOT AFFECT RIGHTS OF CREDITORS.

Bankrupt's dower interest in real estate of her deceased husband, whose estate was insolvent, held not merged in the fee title subsequently acquired

by her from the heir as affecting the respective rights of creditors of bankrupt and of decedent.

4. BANKS AND BANKING ⬡⟁134(1)—RIGHT TO SET OFF DEPOSIT AGAINST NOTES OF DECEDENT.

A bank, which held notes of a decedent at the time of his death, by transferring his account to the name of his administratrix *held* to have waived the right to subsequently apply the account as a set-off on the notes.

5. BANKRUPTCY ⬡⟁151, 267—EXECUTORS AND ADMINISTRATORS ⬡⟁416—SUBROGATION ⬡⟁10(3)—TRUSTEE NOT ENTITLED TO CLAIM AGAINST FUND RECEIVED FROM SALE OF REAL ESTATE; TRUSTEE'S RIGHTS NO GREATER THAN BANKRUPT'S; ADMINISTRATRIX NOT ENTITLED TO SUBROGATION.

Where bankrupt, as administratrix of her insolvent deceased husband's estate, continued his business at a loss, claim of her trustee in bankruptcy against the fund representing proceeds of a sale of real estate in which both bankrupt and the estate of her husband held an interest, for an amount equal to the extent the bankrupt used her own funds to pay creditors of her husband's estate, on the theory that the trustee, standing in her place, was subrogated to the rights of such creditors, cannot be allowed; for the trustee had no greater rights than the bankrupt, and the bankrupt, since she committed a serious breach of trust in making payments from funds obtained by her in the continuance of decedent's business, was not entitled to invoke doctrine of subrogation against creditors of decedent.

In Bankruptcy. In the matter of Elizabeth V. Tietje, bankrupt. Proceeding for distribution of fund realized from sale of real estate. On exceptions to report of special master. Overruled, and report confirmed.

See, also, 253 Fed. 283.

· Leon Lauterstein, of New York City, for trustee and Wolf, Sayer & Heller and Berth Levi & Co., creditors.

Joseph M. Gazzam, of New York City, for Elizabeth V. Tietje, adm'x of Frederick H. Tietje.

Rumsey & Morgan, of New York City, for Franklin Trust Co., trustee for Herman Tietje.

Louis Sturcke, of New York City, for Herman Tietje.

William L. Berk, of New York City, for John J. Keeler, a creditor.

William C. Findlay, of New York City, for C. O. West & Sons, a creditor.

H. C. Wilcox, of New York City, for American Surety Co.

George W. Ryall, of New York City, for International Provision Co., a creditor.

Leon Dashew, of New York City, for Cudahy Packing Co. and Jos. Stern & Sons, creditors.

Lewis & MacNamara, of Brooklyn, N. Y., for Mechanics' Bank.

GARVIN, District Judge. On March 3, 1919, an order was made by this court, directing that all creditors of Frederick H. Tietje, deceased, and all persons, firms, and corporations asserting any claims, liens, interests, rights, or demands against a certain fund in the possession of the trustee herein, to which further reference will be made, arising from the sale of real estate described in orders made by this

⬡⟁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court October 1, 1918, and January 3, 1919, file the same with the clerk of this court on or before April 15, 1919, and appointing a special master to take proof and hear objections filed, and to report to the court findings and conclusions as to the validity, amount, and priority of the respective claims. The master's report was filed August 22, 1919, and was recommitted by order of the court dated September 27, 1919, in order that the testimony taken before the master might be corrected if erroneous and signed by the witnesses, and such further hearing had as should seem proper; this order directed the master to prepare a new draft of his report, to which exceptions might be filed to be passed upon by the master who should thereafter file his completed report in the clerk's office with all exceptions filed with him. Pursuant to said order dated September 27, 1919, a draft report was filed by the master dated October 27, 1919, to which exceptions were filed by various parties in interest. These exceptions were passed upon by the master, and a final report was filed by him on November 13, 1919. That report, with the exceptions theretofore and thereafter filed, is now before the court for review.

I do not wish to be understood as approving of the practice here followed of having the master prepare a draft report and exceptions thereto. Some of the claimants were strongly of the opinion that their right to review the decision of the court would be seriously prejudiced unless the procedure followed was employed, and in order that there might be no possibility of any party being aggrieved without adequate remedy I permitted this practice to be employed.

Elizabeth V. Tietje, the bankrupt, is the widow of Frederick H. Tietje, deceased, who died in Brooklyn June 19, 1917, intestate, leaving as his sole heir at law Herman Tietje, his father, and Elizabeth V. Tietje, his widow. He conducted a wholesale and retail sausage and provision business, in which his wife assisted, at Nos. 654-656 Third avenue, Brooklyn, N. Y., in lands and buildings owned by him. She was appointed administratrix of his estate July 3, 1917, by the Surrogate of Kings County, and qualified by filing a bond of the American Surety Company for $25,000. At the time of his death, Tietje owed more than $56,000, including notes due the Mechanics' Bank for $10,000. His personal property was converted into cash by the administratrix and realized not more than $19,000. He owned five parcels of real estate at the time of his death. The administratrix did not wind up or sell the business and reduce the estate to cash, although she made diligent efforts to sell, but continued as though her husband were still living, except that her purchases and sales were made as "Elizabeth V. Tietje, administratrix of F. H. Tietje, deceased," and "Estate of F. H. Tietje, Elizabeth V. Tietje, Administratrix." The amount of merchandise in stock when Tietje died was about $4,000. Purchases from the date of his death to June 13, 1918, were more than $201,000. During that period the merchandise sales were about $226,000. Upon her appointment the administratrix opened an account with the Mechanics' Bank as "Estate of F. H. Tietje, Elizabeth V. Tietje, Administratrix," to which she transferred two accounts then in the bank belonging to her husband at the time of his death.

This new account was opened with a credit of $10,630.71. The American Surety Company released joint control over the estate by a consent in writing. At the time of decedent's death, Mrs. Tietje had nothing. Thereafter she used the estate moneys as though her husband had not died, paying creditors from the estate bank account, regardless of whether the sales were made before or after her husband's death, and depositing all moneys, without regard to source or when due, in the account of the administratrix.

In the fall of 1917, the administratrix ascertained that she was operating the business at a loss. Proceedings in the Surrogate's Court were instituted for the purpose of authorizing the sale of the assets of the business. An order to sell was made which was later vacated by the Surrogate; this was followed by the filing of a petition in bankruptcy against Elizabeth V. Tietje in this court June, 13, 1918. While the business was being conducted by the administratrix, she lost about $20,000, the assets of the business being practically the same, while the debts (including those due when Tietje died and those incurred thereafter) increased from about $56,000 to about $78,000. Of the indebtedness/due at the time of his death the administratrix has paid $26,190.46; the claims in existence at the time of his death, and unpaid, aggregate $31,135.94. The claims proved and allowed against the bankrupt amount to $42,977.45, exclusive of the claim of the Mechanics' Bank on the bankrupt's liability as indorser of her late husband's notes, for $9,500. By agreement in writing, dated November 1, 1917, Herman Tietje, the father of the deceased, released all claims against the estate of Frederick H. Tietje, the administratrix thereof, and the surety on her bond, and assigned to Mrs. Tietje all his right, title, and interest in the said estate, executing and delivering quitclaim deeds to her, covering the various parcels of real estate that belonged to the deceased; the consideration therefor was Mrs. Tietje's agreement to pay him, Herman Tietje, $20 per week during his lifetime, to secure the payment of which she deposited $1,000 with the Franklin Trust Company and executed a mortgage for $4,500 covering the premises known as 510 Third avenue. The agreement provided that on the death of Herman Tietje the mortgage is to be satisfied and the unpaid balance of the deposit returned to Mrs. Tietje.

During the administration in bankruptcy by this court of the estate of Elizabeth V. Tietje, the trustee obtained an order authorizing him to sell various parcels of real estate (the title to which had been in said Frederick H. Tietje at the time of his death) free and clear of liens and claims of creditors, except as to certain first mortgages. As a result of this order, a sale was had and confirmed by the court. The amount now held by the trustee for distribution is $32,434.09, deposited by him in two accounts, one in the Mechanics' Bank amounting to $27,234.09 and the other $5,200 in the Franklin Trust Company. The latter represents the proceeds of the premises known as 510 Third avenue, covered by the mortgage to the Franklin Trust Company executed by the bankrupt for the benefit of Herman Tietje.

The foregoing facts are substantially as found by the master, and about them there can be little serious question. Exceptions to the

draft report were filed by various parties in interest and were with few exceptions overruled. The final report was then filed by the master, embodying his rulings on the exceptions and setting forth his findings of fact and his conclusions or recommendations with respect to the fund held by the trustee.

Although the exceptions filed are numerous, in many instances they relate to the same finding of the master, and except for questions involving creditors' claims, with regard to which reference will be made, they all have to do with these questions.

First. Should counsel for the trustee be allowed $3,000 from the fund as a fair and reasonable allowance for his services in this proceeding, as recommended by the master?

Second. Should the fund be subject to the following charges, in the order named, as recommended by the master, before it is applied to the payment of any debts of decedent?

(a) Morris Kamber, as trustee in bankruptcy of Elizabeth V. Tietje, bankrupt, for advances made from the general fund of the bankrupt's estate, $803.13.

(b) Morris Kamber, commissions as receiver and trustee, $705.03.

(c) The special master for his services and disbursements herein such sum as the court may allow.

(d) Leon Lauterstein, counsel for trustee, legal services herein $3,-000, if the first question is answered in the affirmative.

(e) The trustee in bankruptcy, $6,588.61, less a pro rata share of the expenses of this proceeding; this sum of $6,588.61 representing the value of the bankrupt's dower right in the real estate, $7,855.42 less $1,266.81, the value of the dower right in premises No. 510 Third avenue, covered by the Franklin Trust Company mortgage.

(f) The Franklin Trust Company, on the mortgage covering premises 510 Third avenue, $1,266.81, less a pro rata share of the expenses of this proceeding; the sum mentioned being the value of the bankrupt's dower right therein.

Third. Should certain claims, to which reference will be hereinafter made, be allowed or disallowed, as found by the master?

Fourth. Should the trustee in bankruptcy be allowed a claim against the fund for payments made by the bankrupt from the proceeds of the business to creditors of deceased, which payments are claimed to be in excess of moneys realized by her from decedent's personalty.

Fifth. Should the fund after the foregoing deductions have been made be divided, pro rata, as recommended by the master, among the creditors of the decedent whose claims have been allowed as debts of Frederick H. Tietje at the time of his death; the aggregate of the fund so applicable to the payment of said debts to share proportionately the expenses of this proceeding?

A determination by the court of each of the foregoing questions, which will be considered in the order in which they appear, will dispose of the exceptions.

[1] First. Objection is made to the conclusion of the master that counsel for the trustee should be allowed $3,000 for services in this proceeding. The trustee took title to the real estate. The involved

character of this proceeding discloses the difficulties connected with determining the interest of the bankrupt's estate in the property. It was plainly the duty of the trustee to have that interest ascertained and fixed by the court. The procedure followed was at least as practical as any that could have been employed. All having claims have benefited by the proceeding to the extent of their respective interests.

While counsel for the trustee also represents certain creditors of decedent, who are in most instances also creditors of the bankrupt, the master very properly observed that this should not operate to deny counsel fair compensation for services performed inuring to the benefit of all in interest. It must be kept in mind that all parties entitled to a share in this fund have benefited in proportion by having this real estate converted into cash and the respective rights determined. It should be added that it is not uncommon for counsel for the trustee to represent creditors of the bankrupt. The master has found the services were worth $3,000, and bases the conclusion upon the nature of the proceeding, the claims involved, the complicated character of the questions presented, the details required to bring about valid sales, and the determination of equities in the fund and distribution, together with the time required, almost 14 months of continuous service. The allowance should not be reduced as excessive, and the conclusion that it is a claim against the fund is approved. In re Torchia (D. C.) 185 Fed. 576.

[2] Second. (a) The advances made by the trustee in bankruptcy from the general fund of the bankrupt's estate, for advertising in connection with the sales and other advances of a like character, solely in relation to the property involved, amounting to $803.13, are a charge on the property and should be returned to the general funds of the estate by the trustee.

(b) The master has allowed Morris Kamber commissions as receiver and trustee in the sum of $705.03. As receiver Mr. Kamber entered upon and took possession of the various parcels of real estate; he continued in possession as trustee; as both receiver and trustee he preserved and managed the real estate until the sales were completed in March, 1919. Section 48, subdivisions a and d, of the Bankruptcy Act (Comp. St. § 9632), are authority for fixing the commissions in accordance with the conclusions of the master, which are approved. The report allows $345.50 single commissions as receiver on the sum of $34,549.59 and $359.53 single commissions as trustee on the said sum of $34,549.59. Why there is this slight difference in computation does not appear in the report. As no objection has been raised to the discrepancy, it may be assumed that the reason is that Mr. Kamber has received a part of his commissions. If an error has been made, the court, upon application, will cause the proper sum to be fixed.

(c) The special master must be allowed for his services, out of the fund, upon the same principle that justifies payment to counsel who initiated and had general charge of the conduct of the proceedings. He has filed a certificate which indicates what was already apparent to the court—that a vast deal of time had been required and many

complicated questions presented for determination. The fees of the master are fixed at $1,500.

(d) Leon Lauterstein, counsel for the trustee, should be allowed out of the fund the sum of $3,000 for services for the reasons heretofore indicated.

[3] (e) This presents for determination the question whether the dower of the bankrupt, which unquestionably was applicable to the payment of her individual indebtedness between her husband's death and the transfer of the real estate to her by Herman Tietje, became merged in the fee which she acquired by said transfer, or whether there was no merger. Undoubtedly there are cases to be found in abundance in the books which are authority for the contention that dower may be merged in the fee, but I have been referred to no authority which holds where there are two classes of creditors, as is the case here, the right of one, i. e. the creditors of the widow, to look to the dower for payment, can be taken away by the act of the widow in accepting a conveyance of the fee of the property. If creditors of a decedent can only sell for the payment of their claims the interest in real property owned by the decedent at the time of his death (Van Vleck v. Enos, 88 Hun, 348, 357, 34 N. Y. Supp. 754), that interest cannot be increased after death by the method here involved to the prejudice of creditors of another class who extend credit while the widow had her dower, clearly applicable to their claims. As this proceeding is in equity, a merger cannot be allowed, because the effect thereof is to take from creditors of the bankrupt rights to which they would unquestionably be entitled if the estate of the decedent were solvent. Tietje's creditors can gain no rights in the property to which they were not entitled when he died except by some act which does not prejudice the rights of others. The widow claims a merger; as the effect would be prejudicial to her creditors, it cannot be allowed. The conclusion that a wife's dower rights are not extinguished by her taking title to the fee, where a merger would be inequitable, is not without authority. Malloney v. Horan, 49 N. Y. 111, 10 Am. Rep. 335. The conclusion of the master that the value of the dower $7,855.42 (less $1,266.81) should be paid by the trustee in bankruptcy into the general fund of the estate after deducting a pro rata share of the expenses of this proceeding is approved.

(f) A deduction of $1,266.81 from the amount of the dower, referred to in the foregoing paragraph, was approved by the master, who found that it should be paid to the Franklin Trust Company to which the bankrupt had made a mortgage for $4,500 covering the premises 510 Third avenue. This mortgage was valid (being for a valuable consideration) to the extent of the bankrupt's actual interest in the property covered thereby. As the property (subject to her dower) was applicable to the payment of decedent's debts, she could mortgage only her dower right. $1,266.81 is the value of the dower in 510 Third avenue, and that sum, less a pro rata share of the expenses of this proceeding, should be paid to the Franklin Trust Company as recommended by the master.

Third. The following claims based on transactions with the deceased prior to his death have been actually filed and allowed, without objection:

| | |
|---|---:|
| D. Abel | $ 249.88 |
| Bechstein & Co. | 780.00 |
| Bernard J. Becker | 110.00 |
| Brecht & Co. | 1,511.55 |
| Godfrey Keeler & Co. | 562.01 |
| Hutwelker Bros. | 654.20 |
| International Casings, Cleaning & Rendering Co. | 375.00 |
| John J. Keeler | 4,961.27 |
| J. K. Laudenslager | 294.43 |
| Berth Levi & Co. | 1,482.00 |
| Lester J. McComb | 247.17 |
| Oppenheimer Casing Co. | 1,524.60 |
| S. Oppenheimer & Co. | 130.50 |
| Max Phillips | 120.00 |
| N. M. Roos | 127.90 |
| Stern & Jordan | 205.76 |
| Shipley Construction Co. | 1,159.97 |
| Van Loan & Co. | 453.00 |
| Wolf, Sayer & Heller | 5,940.96 |

Three claims were filed against the fund for goods sold after Tietje's death, the creditors in question having also filed claims against the bankrupt's estate:

| | |
|---|---:|
| Cudahy Packing Co. | $2,080.89 |
| Joseph Stern & Sons | 857.88 |
| Charles O. West & Sons | 972.76 |

The two first named have withdrawn the claims filed by them against the fund. The West claim is based on sales made after Tietje's death, has been proved and allowed in the bankruptcy proceeding, and a dividend therein has been paid to and accepted by the creditor. Obviously, the conclusion of the master that it must be disallowed as against the fund is correct. The creditor cannot look to decedent's estate. Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493. Figge & Hutwelker have filed a claim, part of which, i. e. $355.04, represents goods delivered after Tietje's death. It appears, however, that this item is a part of a total of $1,542.95 representing the amount due under a contract made by Tietje during his lifetime. This being so, the administratrix was bound by the contract, and the decedent's estate is liable for the whole amount involved. Howard v. Heinerschit, 16 Hun, 177. The master correctly allowed the full claim against the fund as filed.

A claim of $34 was filed by the Sander Manufacturing Company. The claimant agreed to withdraw the claim against decedent's estate upon the return of certain machinery. The machinery was returned, and the master properly disallowed the claim.

The Mechanics' Bank had two notes of Tietje's at the time of his death, one for $7,000 due July 16, 1917, and one for $3,000 due September 11, 1917, both indorsed by the bankrupt. When he died, he had two accounts with the bank. Upon the appointment of the administratrix, a new account was opened in the name of "Estate of F.

H. Tietje, Elizabeth V. Tietje, Administratrix," to which was transferred the two accounts of the deceased. This new account when opened was $10,630.71, representing the cash on hand when Tietje died and a further sum resulting from sales before the administratrix was appointed. When the $7,000 note fell due, Mrs. Tietje paid $500 on account out of the account of the administratrix, giving a renewal note for $6,500. The notes were renewed from time to time as they became due, no further payment being made, the administratrix signing the new notes as administratrix. The bank filed a proof of claim with the administratrix as a creditor of decedent, for $9,500 which the administratrix has acknowledged as valid. At the time of bankruptcy, the administratrix had $3,612.30 to her credit at the bank. When the $6,500 renewal note came due in July, 1918, the bank applied the said balance in part payment of the note, claiming a right to an offset. The bank has filed a claim for $5,887.70, being the amount of the notes, $9,500 less $3,612.30. Objections have been filed to this claim on the ground that if it is allowed the bank will obtain a preference over the other creditors of Tietje to the extent of $3,612.30, the amount of the deposit. The bank claims that this court has no power to determine the right of the bank to set off the deposit.

The conclusion of the master that the bank had no right to set off this deposit is approved. He has found that the bank has a general claim against the decedent's estate for $9,500, and may participate in the fund on that basis provided it returns to the administratrix $3,612.30; if it refuses to make such refund, the master concludes that the claim may be allowed against the fund on the basis of $9,500, but that from the share of the fund which the bank would receive on the basis of a claim for $9,500 be deducted $3,612.30, giving credit on such deduction to the bank's proportionate interest in the amount of the deposit. This recommendation is approved.

[4] The bank has filed its proof of claim herein; it has therefore submitted to the jurisdiction of the court upon the question of the amount due it as a creditor of deceased. When the bank transferred the decedent's accounts to the name of the administratrix, its right to set off such accounts on the notes due from the deceased was lost. Thompson v. Whitmarsh, 100 N. Y. 35, 2 N. E. 273. It clearly appeared that no novation was intended and that the object of the renewal notes was to keep alive the claim against the estate—with Mrs. Tietje's personal indorsement as additional security.

The American Surety Company has appeared herein, but has filed no claim against the fund, and none can be allowed.

[5] Fourth. The trustee in bankruptcy has filed a claim against the fund for $10,092.57 upon the theory that the bankrupt used her own funds to that extent to pay creditors of her husband's estate, and that by the doctrine of subrogation her trustee in bankruptcy, who stands in her place, is entitled to receive any money from decedent's estate which its creditors who have been paid by Mrs. Teitje (with her own funds) would have been entitled to receive, if they had not been so paid. The trustee's argument that the claim be allowed is persuasive, but fails to give due weight, I think, to the position of the

trustee. Surely he can have no greater rights than the bankrupt whose estate is in his charge. The bankrupt was the administratrix of her husband's estate. She made the payments from funds obtained by her in the continuance of decedent's business; in this continuance, however well meaning, she has committed a serious breach of trust (In the Matter of U. S. Mortgage & Trust Co., 114 App. Div. 532, 100 N. Y. Supp. 12), and cannot seek to invoke the doctrine of subrogation against creditors of the deceased, who are prevented by her conduct from having the personal property of the decedent applied to the payment of their claims.

Fifth. It follows that, after the foregoing deductions have been made, the fund should be divided, pro rata as recommended by the master, among the creditors of the decedent whose claims have been allowed as indicated herein as debts of Frederick H. Tietje at the time of his death; the aggregate of the fund so applicable to the payment of said debts to share proportionately the expenses of this proceeding.

I have examined and have carefully considered the able and interesting briefs submitted by the various claimants. They have been remarkably helpful. The report of the learned special master is well considered and comprehensive, and I am of the opinion that his conclusions are in accord with an equitable distribution of the fund.

The exceptions are overruled. The final report is confirmed.